311 Ga. 293
FINAL COPY

S21A0089.  ANTHONY v. THE STATE.

WARREN, Justice.

Terrone Anthony was convicted of malice murder, armed

robbery, and possession of a firearm during the commission of a

felony in connection with the shooting death of Kavader McKibben.[1]

---

[1] The crimes were committed on December 4, 2009.  On December 22, 2009, a Fulton County grand jury indicted Anthony and his co-defendant, Aaron Jackson, for malice murder, felony murder predicated on armed robbery, felony murder predicated on aggravated assault, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. Anthony alone was indicted for possession of a firearm by a convicted felon and a third count of felony murder predicated on that firearm offense.  At a joint trial held from August 18 to 23, 2011, the trial court directed verdicts of not guilty for possession of a firearm by a convicted felon and the felony murder count predicated on that offense.  A jury found Anthony guilty of all remaining counts and found Jackson not guilty on all counts.  On August 25, 2011, the trial court sentenced Anthony to serve life in prison for malice murder, a concurrent term of twenty years for armed robbery, and a consecutive term of five years for possession of a firearm during the commission of a felony.  The two remaining felony murder counts were vacated by operation of law, and the trial court merged the aggravated assault count into the malice murder count. Anthony timely filed a motion for new trial on August 25, 2011, which he amended through new counsel on September 11, 2019.  The trial court denied the amended motion on October 22, 2019.  Anthony timely filed a notice of appeal on November 19, 2019, which he amended the next day.  The case was docketed in this Court to the term beginning in December 2020 and submitted for a decision on the briefs.

On appeal, Anthony contends that his trial counsel provided constitutionally ineffective assistance in four ways. We disagree and affirm Anthony's convictions.

The evidence presented at Anthony's trial showed the following.[2] On the evening of December 4, 2009, Anthony and an accomplice entered a liquor store where McKibben was working. Anthony — who was wearing a ski mask — pointed a firearm at McKibben while the accomplice searched McKibben's pockets and took belongings from him and money from a cash register. McKibben's co-worker, Roland Williams, began walking toward the back of the store, and Anthony followed. A shoot-out ensued shortly thereafter. The store owner pulled a gun and fired at Anthony, striking him in the leg. Anthony fired back, and in doing so struck McKibben three times. As Anthony reached to open the door and leave, the owner shot Anthony in the arm. Anthony limped out of the store, holding his arm. A security guard across the street

---

[2] Anthony does not raise the sufficiency of the evidence on appeal. Therefore, under *Davenport v. State*, 309 Ga. 385, 399 (846 SE2d 83) (2020), we do not consider sufficiency of the evidence sua sponte.

2

followed Anthony to a nearby house where Anthony stopped, having left behind a trail of blood from the liquor store. When police officers arrived, they found Anthony bleeding profusely, clad in the same camouflage jacket that witnesses described the shooter wearing. McKibben died at the liquor store from his wounds. Anthony and his friend, Aaron Jackson, were arrested.

At trial, video surveillance of the shoot-out was played for the jury. Anthony testified and admitted that he entered the store while wearing a mask, held a gun while his accomplice took money from McKibben, ran toward the back of the store because he thought an employee was probably going to get a gun, and then fired his gun at the store owner after the owner shot Anthony in the leg. However, he denied that he planned to shoot anyone or intended to do so when he entered the liquor store. Anthony also testified that his accomplice was not Jackson, but another person. The trial court charged the jury on mutual combat and justification. The jury found Anthony guilty of malice murder, armed robbery, the firearm offense, and other offenses that were vacated by operation of law or

3

merged for sentencing purposes, and found Jackson not guilty on all counts.

1. To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do

what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id. (citation and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

2. Anthony's first claim is that his trial counsel was ineffective because he did not seek a mistrial when the State discovered that the indictment mistakenly alleged that Anthony was a convicted felon. This claim fails, however, because the record shows that trial counsel made a reasonable, strategic decision to request a curative instruction and chose not to request a mistrial.

Anthony was charged with possession of a firearm by a convicted felon based on a prior burglary conviction and was charged with felony murder predicated on that firearm offense; the indictment charging those counts was read to the jury. However, shortly before the State rested its case at trial, the prosecutor discovered that Anthony was in fact a first-offender probationer and not a convicted felon. As a result, the prosecutor moved to nolle pros the two convicted-felon counts and asked the trial court for a curative instruction. Anthony, Jackson, and their attorneys discussed the issue, and Anthony's counsel announced that he would not be requesting a mistrial, only a curative instruction. The trial court told Anthony that he had "to pick. I'm neutral as to which one, but I need an answer." Anthony himself confirmed that he wanted to proceed in the way that his counsel announced: to request a curative instruction instead of a mistrial. The trial court then gave the following curative instruction that his counsel and Jackson's counsel proposed:

> [A]t the commencement of this trial, I read the

6

indictment to you, and I read to you a charge that alleged that Mr. Terrone Anthony was a convicted felon and a charge of felony murder as to Mr. Terrone Anthony based upon the claim that he was a convicted felon. Let me now advise you that the State has advised me that count 8 is a mistake. Terrone Anthony is actually not a convicted felon, so this count is now removed from your consideration in this indictment, as is count 3, which is the felony murder charge based upon that claim. You are, therefore, not to consider either of these charges. You are to disregard anything that I might have read to you or said to you associated with those charges because they are, in fact, a mistake by the State.

The trial court later directed verdicts of not guilty on the two counts at issue. At the hearing on the motion for new trial, Anthony testified that his trial counsel told him that a mistrial was "nothing," that Anthony should not "go for" a mistrial, and that trial counsel "like[d] the jury that we selected." Trial counsel testified that he and Jackson's attorney "liked the jury" and that he thought the trial court "had cured" the problem with the indictment with its instruction.

Given that the convicted-felon counts of the indictment were read only once, that trial counsel wanted to try Anthony's case in front of the jury that he had already selected, that Anthony agreed

to trial counsel's recommendation to seek a curative instruction and not a mistrial, and that the trial court informed the jury that the State had made a "mistake" in the charges because Anthony was not actually a convicted felon, Anthony has failed to show that his trial counsel's decision not to request a mistrial was objectively unreasonable. See, e.g., *Lynn v. State*, 310 Ga. 608, 613-614 (852 SE2d 843) (2020) (considering that a witness's reference to a prior jury in the case was brief and counsel's explanations for the decision not to move for mistrial were reasonable, defendant did not show that that decision was constitutionally deficient); *State v. Goff*, 308 Ga. 330, 335 (840 SE2d 359) (2020) (given the fleeting, nonspecific nature of trial counsel's reference to the defendant's probation status, trial counsel was not objectively unreasonable when he did not move for a mistrial because he thought "'we had a pretty good jury and a pretty good trial going'").

3. Anthony claims that his trial counsel was ineffective because he put Anthony on the witness stand to admit that he was one of the people who robbed the liquor store and that he shot

8

McKibben. We disagree.

The primary thrust of this claim is that trial counsel "forced" Anthony to testify and admit to his role in the robbery and shooting, even though Anthony wanted to present a defense that he had gone to the liquor store only to collect money that McKibben owed Anthony's friend for drugs — a theory that he claims trial counsel did not investigate. Anthony relies on his testimony at the hearing on his motion for new trial to support this claim. Prior to his testimony at trial, however, Anthony personally affirmed his decision to testify. And the trial court was authorized to credit trial counsel's testimony at the hearing on Anthony's motion for new trial that trial counsel recommended to Anthony that he *not* testify, and that counsel had never been informed about the alleged drug-debt theory Anthony later described.

Although the trial court made no express factual findings or credibility determinations in its order denying Anthony's motion for new trial, it was nonetheless "authorized to credit the testimony of [Anthony's] counsel," "[a]nd in the absence of explicit factual and

credibility findings by the trial court, we presume implicit findings were made supporting the trial court's decision." *Davis v. State*, 306 Ga. 430, 432-433 (831 SE2d 804) (2019) (citation and punctuation omitted). Accordingly, even though Anthony's "testimony contradicted that of [his counsel], the trial court implicitly credited [counsel's] version of events when it denied [Anthony's] ineffective assistance claim, and we accept the trial court's factual findings." *Williams v. State*, 308 Ga. 532, 536 (842 SE2d 1) (2020). As a result, Anthony has failed to show that his trial counsel's performance was constitutionally deficient. See *Brooks v. State*, 305 Ga. 600, 607-608 (826 SE2d 45) (2019) (defendant failed to show that trial counsel performed deficiently by failing to inform him adequately of his right to testify, where the trial court found credible counsel's testimony that she had advised defendant of his right to testify, that it was not in his best interest to testify, and that the decision to testify was ultimately his to make).

4. Anthony claims that his trial counsel was ineffective because counsel failed to argue meaningfully on Anthony's behalf in

closing argument. This claim also fails, however, because the record shows that counsel's closing argument was strategic and was not objectively unreasonable.

To advance his argument, Anthony primarily relies on the first portion of his counsel's closing argument: "I don't have a defense. None whatsoever. Not at all. A defense is, I wasn't involved. My client was involved. His gun, his bullet, his hand. He fired the fatal shot. I don't have a defense. Not at all. None whatsoever." Anthony contends that these words constitute an admission of counsel's ineffectiveness and, more specifically, a demonstration that he did not intend to prepare a plausible defense like mutual combat and a failure to hold the State to its burden of proof.

"An attorney's decision about which defense to present is a question of trial strategy." *Hills v. State*, 306 Ga. 800, 807 (833 SE2d 515) (2019) (citation and punctuation omitted). "Unless the choice of strategy is objectively unreasonable, such that no competent trial counsel would have pursued such a course, we will not second-guess counsel's decisions in this regard." Id. (citation and punctuation

11

omitted). With respect to closing argument, "[d]efense counsel is permitted wide latitude . . . and is not ineffective simply because another attorney might have used different language or placed a different emphasis on the evidence." *Merritt v. State*, 310 Ga. 433, 435 (851 SE2d 555) (2020) (citation and punctuation omitted). Moreover, "[a] closing argument is to be judged in the context in which it is made." *Styles v. State*, 308 Ga. 624, 629 (842 SE2d 869) (2020) (citation and punctuation omitted).

Here, a review of the whole closing argument, together with counsel's testimony at the hearing on the motion for new trial, shows that trial counsel developed the following defense strategy after discussion with Anthony: conceding guilt of both armed robbery and the firearm charge in an effort to maintain credibility with the jury; convincing the jury that Anthony lacked the intent to commit malice murder; and making a causation argument to negate the felony-murder charge because Anthony discharged his firearm only after completing the robbery and in the course of trying to protect himself. Thus, even though trial counsel disclaimed Anthony's defense to

12

armed robbery or the firearm charge, the full context of his closing argument makes clear that he was arguing that the jury should find Anthony not guilty of the more serious murder charges. Indeed, the record shows that at the time of closing argument, counsel's choices were limited: the evidence of Anthony's involvement in the armed robbery and the shooting was overwhelming, and Anthony had insisted on testifying and had specifically admitted his involvement in the robbery and shooting. Moreover, in contrast to Anthony's testimony at the motion for new trial hearing, trial counsel testified that Anthony never said that he entered the liquor store to help a friend confront McKibben about a drug debt, thus undercutting the defense theory that Anthony claimed he wanted to advance at trial.

Under these circumstances, trial counsel's strategic decisions about Anthony's defense and how to argue it in closing were not objectively unreasonable and therefore did not amount to constitutionally deficient performance. See, e.g., *Blackwell v. State*, 302 Ga. 820, 825-826 (809 SE2d 727) (2018) (it is not patently unreasonable for trial counsel to make a strategic decision to base

the defense on the evidence at trial and on the defendant's consistent account, rather than risk losing credibility with jury); *Muller v. State*, 284 Ga. 70, 71 (663 SE2d 206) (2008) (it was a reasonable strategy to argue that the defendant lacked the malicious intent necessary to support a malice murder conviction when any other defense was problematic).[3]

5.    Finally, Anthony claims that his trial counsel was ineffective by explicitly conceding in closing argument Anthony's guilt of armed robbery and, as a result, implicitly conceding his guilt of felony murder.  We again disagree.

To support his claim, Anthony points to the following portion of counsel's closing argument:

> And he's wrong for that and guilty of armed robbery, so we don't even have to talk about that.  So when you get back in the back, you just check that off; guilty of armed robbery.    That's Count Number 5.    He's guilty of

---

[3] We note that because no convictions were entered on Anthony's felony murder charges, his ineffective assistance claims are moot to the extent they pertain to the portions of trial counsel's closing argument that reference felony murder.  See *Darville v. State*, 289 Ga. 698, 702 (715 SE2d 110) (2011) (defendant's contention that counsel was ineffective by failing to object to the omission of a particular jury instruction on felony murder was moot because defendant was found guilty of malice murder and no conviction was entered on the felony murder charge).

possession of a firearm during the commission of a felony. Just check that off. He's guilty of that. He told you that.

Anthony's complaint about this concession is closely related to the preceding claim that we considered and rejected above in Division 4. Here, however, Anthony more specifically argues that conceding guilt of armed robbery was tantamount to a guilty plea that was entered without his consent or a valid waiver of his constitutional rights, and that this concession was improper and presumptively prejudicial.

In *Florida v. Nixon*, 543 U.S. 175, 187 (125 SCt 551, 160 LE2d 565) (2004), the United States Supreme Court made clear that although trial counsel "undoubtedly has a duty to *consult* with the client regarding 'important decisions,' including questions of overarching defense strategy," id. at 187 (citing *Strickland*, 466 U.S. at 688; emphasis supplied), "trial counsel is not obligated to obtain client *consent* as to decisions regarding trial strategy," *Hendrix v. State*, 298 Ga. 60, 64 n.3 (779 SE2d 322) (2015) (citing *Nixon* and offering as examples of decisions requiring client consent "decisions

15

regarding whether to plead guilty, whether to waive a jury trial, whether to waive the right to testify, and whether to pursue an appeal") (emphasis in original). Counsel's strategic choice to concede guilt therefore "is not impeded by any blanket rule demanding the defendant's explicit consent," *Nixon*, 543 U.S. at 192; likewise, counsel "is not per se ineffective for adopting a strategy to concede guilt, even if his client does not expressly consent to that strategy," *Harris v. State*, 358 Ga. App. 802, 808 (856 SE2d 378) (2021) (citing *Nixon*). Cf. *McCoy v. Louisiana*, ___ U.S. ___, ___ (138 SCt 1500, 1510, 1511, 200 LE2d 821) (2018) (holding that "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission," and "[c]ounsel's admission of a client's guilt over the client's express objection is error structural in kind," not requiring any showing of prejudice). To that end, counsel's strategic decision to concede guilt is typically reviewed under the familiar *Strickland* standard, see *Nixon*, 543 U.S. at 192, and if undisputed evidence of a defendant's guilt on a lesser charge has been presented at trial, it is not an objectively unreasonable trial

16

strategy to concede guilt of that offense "in an effort to avoid a conviction on the more serious murder charges." *Favors v. State*, 296 Ga. 842, 846 (770 SE2d 855) (2015). Applying the relevant principles of an attorney's duty to consult and analyzing trial counsel's strategy through the lens of *Strickland*, the Supreme Court in *Nixon* rejected the defendant's claim that trial counsel's concession of guilt was the "functional equivalent of a guilty plea" because the defendant "retained the rights accorded a defendant in a criminal trial." *Nixon*, 543 U.S. at 188.

So too here. The record shows that trial counsel's concession of Anthony's guilt of armed robbery was part and parcel of his trial strategy — which, as we have already explained above, was not objectively unreasonable — of maintaining credibility with the jury, convincing the jury that Anthony lacked the intent to commit malice murder, and making a causation argument on the felony murder charge. That strategy did not require Anthony's consent, and Anthony made no "intransigent objection" to counsel's concession of guilt of armed robbery; to the contrary, counsel's defense strategy

17

was wholly consistent with Anthony's own testimony at trial. See *Nixon*, 543 U.S. at 187, 192. Cf. *McCoy*, 138 SCt at 1510. Moreover, just as in *Nixon*, counsel's concession of Anthony's guilt of lesser offenses is not tantamount to a guilty plea, because it occurred in the context of a jury trial, and only after the State was required to present evidence establishing the essential elements of the crimes with which Anthony was charged, the defense was afforded the right to confront and cross-examine witnesses for the prosecution, and Anthony made an informed decision to waive his privilege against self-incrimination. See *Nixon*, 543 U.S. at 188-189. In light of the overwhelming evidence of Anthony's guilt of the lesser offenses of armed robbery and the firearm offense, it was not an objectively unreasonable trial strategy for counsel to concede guilt of those offenses in an attempt to avoid Anthony being convicted of a more serious murder charge. See *Favors*, 296 Ga. at 846.[4]

---

[4] Notably, trial counsel's concession — to which Anthony did not object — could not amount to the kind of structural error that could raise a presumption of prejudice. See *Nixon*, 543 U.S. at 193. Cf. *McCoy*, 138 SCt at 1511.

*Judgment affirmed. All the Justices concur.*

Decided April 19, 2021.

Murder. Fulton Superior Court. Before Judge Russell.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.

---

We further note that Anthony's argument that trial counsel implicitly conceded Anthony's guilt of felony murder is moot because no convictions were entered on the felony-murder charges. See *Darville*, 289 Ga. at 702.

19