NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 9, 2025

S25A1255.  LEWIS v. THE STATE.

MCMILLIAN, Justice.

George Michael Lewis appeals from his convictions for malice murder and other crimes in connection with the shooting death of Kendra Weathers.[1] On appeal, Lewis alleges that (1) the evidence

---

[1] The crimes were committed on April 14, 2015, April 26, 2015, and May 5, 2015. In July 2015, a Cobb County grand jury indicted Lewis for malice murder (Count 1), two counts of felony murder (Counts 2 and 4), two counts of aggravated assault, family violence (Counts 3 and 5), possession of a firearm during the commission of a felony (Count 6), aggravated stalking (Count 7), battery, family violence (Count 8), violating family violence order (Count 9), and contributing to deprivation of a minor (Count 10).  Count 8 occurred on April 14, while Count 9 occurred on April 26. All other counts occurred on May 5. At a jury trial in October 2016, Lewis was found guilty of all counts except for Count 8. On October 14, 2016, the trial court sentenced Lewis to serve life in prison without the possibility of parole for malice murder (Count 1), a consecutive term of five years in prison for possession of a firearm during the commission of a felony (Count 6), a concurrent term of ten years in prison for aggravated stalking (Count 7), and twelve months to serve each for violating the family violence order and for contributing to the deprivation of a minor (Counts 9 and 10). The other counts were either vacated by operation of law or merged for sentencing purposes. Lewis timely filed a motion for new trial, which was amended through new counsel on January 28, 2019. Following a

was constitutionally insufficient to sustain his convictions on Counts 1 through 7, (2) the trial court erred in admitting into evidence the underlying conduct of his discharged First Offender plea and sentence, and (3) trial counsel rendered ineffective assistance at the *Jackson-Denno*[2] hearing. Because the evidence against Lewis in committing these crimes was overwhelming, evidence of the underlying conduct of the First Offender offense was properly admitted into evidence, and the trial court properly denied the ineffective assistance claim, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed that Lewis was in a romantic relationship with Weathers. The two began living together, along with Weathers's children, in 2012 and moved to Georgia around February 2015. In April 2015, Lewis was charged with battery of Weathers and, as a condition of his pretrial release, was not to have any contact with

---

hearing, the trial court denied the motion for new trial, as amended, on August 12, 2024. Lewis timely filed a notice of appeal, and his case was docketed to this Court's August 2025 term and submitted for a decision on the briefs.

[2] See *Jackson v. Denno*, 378 US 368 (1964).

her. Also in that same month, Shenique Griffith[3] and her children began living in Lewis and Weathers's apartment.

In the early morning hours of May 5, 2015, Lewis was at the apartment despite the no-contact order,[4] and he and Weathers began arguing. Griffith was in the room during the argument and made an audio recording of the incident on her phone, which was admitted at trial. Weathers told Lewis to leave the apartment and threatened to call the police if he refused to leave. After this statement, Lewis pulled out a gun, Weathers screamed and ran out of the apartment, and Lewis followed, shooting her twice. Griffith testified that Lewis shot Weathers in the back as she was running away, but that Griffith did not see the second shot because after the first shot, she ran to the children who were also in the apartment and locked them in their room. Lewis was then seen by neighbors running and getting into his car with the gun and hurriedly driving

---

[3] Shenique Griffith was a friend of Weathers' whom Weathers offered a place to live in exchange for help in watching the children.

[4] Lewis testified at trial that Weathers had invited him back to the apartment.

off. Weathers died from the two gunshot wounds.

After driving away from the scene of the incident, Lewis left for Savannah. That same morning, around 8:00 a.m., a Bulloch County Sheriff's Department deputy attempted to pull Lewis over around the Statesboro area. Lewis continued driving, and a chase ensued over the next 50 miles. Eventually, a Georgia State Patrol officer performed a PIT maneuver on Lewis's car, ending the chase as Lewis's car crashed. Because Lewis believed that his leg was broken and he passed out after being handcuffed, Lewis was taken to the hospital where he was intubated and given medication that put him in a medically-induced coma so he would not move during a CAT scan. Hours afterwards, officers transported Lewis back to the police station in Cobb County once he was medically cleared by the hospital for transport.

After placing him in the transport vehicle, the officers transporting Lewis asked him no questions except whether he needed to use the restroom and whether he felt okay. During transport, Lewis repeatedly discussed Weathers and Griffith trying

4

to "kick [him] out of [his] apartment." One of the officers transporting him confirmed that this was "the kind of manner in which [Lewis] was talking" the "entire time" during transport regarding what happened with Weathers and Griffith. At some point during transport, Lewis began hitting his head. Officers told him to stop, and Lewis briefly stopped before continuing again "at least five or six different times throughout [the] trip."

At trial, Lewis testified that during an argument, Weathers pulled out a gun, and it went off as Lewis was trying to grab it from her. Not knowing that Weathers had been shot, Lewis then ran to his car and left because he was scared.

1. Lewis first contends that the evidence was not sufficient as a matter of constitutional due process to sustain his convictions on Counts 1 through 7. When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence presented in the light most favorable to the verdict and ask whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 US 307, 319 (1979).

Questions about the weight and credibility of evidence, the inferences to be drawn from it, and the resolution of any conflicts in the evidence are left to the jury. See *Anderson v. State*, 319 Ga. 56, 59 (2024).

As an initial matter, we note that any argument that the evidence was insufficient concerning Lewis's aggravated assault guilty verdicts (Counts 3 and 5), and attendant felony murder guilty verdicts (Counts 2 and 4), is moot because the trial court merged or vacated all those counts. See *Eggleston v. State*, 309 Ga. 888, 890-91 (2020). Thus, we limit our sufficiency review to Count 1 (malice murder),[5] Count 6 (possession of a firearm during the commission of a felony),[6] and Count 7 (aggravated stalking).[7]

---

[5] "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1(a).

[6] "Any person who shall have on or within arm's reach of his or her person a firearm … during the commission of, or the attempt to commit: (1) Any crime against or involving the person of another … and which crime is a felony, commits a felony." OCGA § 16-11-106(b)(1).

[7] A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent

Lewis argues that the evidence is insufficient as Lewis was one of two eye-witnesses to the shooting – the other being Griffith – and his testimony matches the physical evidence presented by the State, whereas Griffith's testimony does not. However, this is no more than disagreement with the jury's resolution of any conflicts in the evidence and assessment of the weight and credibility of the evidence. And the evidence against Lewis was very strong. Lewis was subject to a protective order prohibiting him from having contact with Weathers. And although Lewis claimed that Weathers had invited him to the apartment, which the jury was authorized not to believe, Griffith testified that during the argument between Lewis and Weathers, Weathers told Lewis to leave, thereby revoking any consent for Lewis to be at the apartment. See *State v.* Burke, 287 Ga. 377, 379 (2010) (under OCGA § 16-5-91(a) "[t]he contact

protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-91(a).

with the victim in violation of the protective order must also be 'without the consent of the other person for the purpose of harassing and intimidating' him or her") (quoting OCGA § 16-5-91(a)). The incident was also audio recorded on Griffith's phone. After shooting Weathers, Lewis immediately fled the scene and engaged in a high-speed chase with officers to escape capture. We conclude that this evidence was more than sufficient to sustain Lewis's convictions on Counts 1, 6, and 7 as a matter of constitutional due process.

2. Lewis also contends that the trial court erred in admitting into evidence the conduct underlying his discharged First Offender plea and sentence because a First Offender plea and discharge is not admissible for any purpose.[8] In support, Lewis relies on former OCGA § 42-8-62(a), which provided that completion of first-offender probation "completely exonerates the defendant of any criminal purpose and shall not affect any of his civil rights or liberties; and the defendant shall not be considered to have a criminal conviction."[9]

---

[9] OCGA § 42-6-62(a) was amended effective July 1, 2016, and that

During the trial, before Lewis testified, the parties brought to the court's attention a potential issue regarding the State's plan to cross-examine Lewis under OCGA § 24-6-608(b)(1) ("Rule 608(b)(1)") about the incident underlying Lewis's First Offender plea to employment insurance fraud. The State represented that the First Offender plea and sentence would not be tendered to the jury and would be used only to refresh Lewis's recollection if he denied the conduct underlying the plea. The trial court ruled that such a cross-examination would be admissible under Rule 608(b) as it "goes to the Defendant's character for truthfulness or untruthfulness."

On cross-examination, the State challenged Lewis's account of the shooting and immediately thereafter asked Lewis several questions about whether "[b]ack in 2004 ... [he] received some unemployment insurance money" that was "more money than [he was] entitled to ... [b]ecause [he] made false representations to the Department of Labor" Lewis responded "[y]es" to this line of

amended version no longer contains this language. This language is now found in OCGA § 42-8-60(i). For purposes of this analysis, we assume that the former version applies because Lewis's claim fails under either version of the statute.

9

questioning. There were no further questions regarding that incident.

> Rule 608(b)(1) provides:
>
> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness ... may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) Concerning the witness's character for truthfulness or untruthfulness[.]

Even though Lewis entered a First Offender plea to employment insurance fraud, which was not admitted into evidence, the specific facts of Lewis's conduct were a proper subject of inquiry on cross-examination under Rule 608(b)(1). The specific instance of the conduct underlying the First Offender Offense – false representations to the Department of Labor in order to receive more unemployment insurance money than what he was entitled to – is the type of fraudulent conduct that pertains to his character for untruthfulness. See *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F3d 1460, 1464 (11th Cir. 1994) ("Acts

probative of untruthfulness under Rule 608(b) include such acts as forgery, perjury, and *fraud*." (emphasis added)).[10] And Rule 608 does not include any sort of carve-out for when that conduct happens to have resulted in a first-offender conviction. Moreover, former OCGA § 42-6-62(a) does not address whether evidence of the conduct underlying the first-offender conviction may be introduced at trial. Therefore, we conclude that this line of questioning was proper under Rule 608(b)(1).

Lewis further argues that the trial court erred in admitting this evidence under OCGA § 24-4-403 ("Rule 403").[11] However, even assuming that Lewis preserved this objection for ordinary appellate review,[12] the trial court did not abuse its discretion in determining

---

[10] Because Rule 608 is materially similar to Federal Rule of Evidence 608, we look to federal case law in applying Rule 608. See *State v. Almanza*, 304 Ga. 553, 556 (2018).

[11] OCGA § 24-4-403 provides:

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[12] Despite Lewis's failure to explicitly object to the admission of this evidence under Rule 403, the trial court conducted a Rule 403 analysis and

that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. "The exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Jones v. State*, 311 Ga. 455, 464 (2021) (citation and punctuation omitted). "The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." *Harris v. State*, 314 Ga. 238, 263 (2022) (punctuation omitted). Lewis's credibility was a significant issue at trial, especially considering his attack on the credibility of Griffith, the only other eyewitness to the killing. On the other hand, Lewis's fraudulent conduct was not similar to the charged crimes, nor was it particularly inflammatory. Given the limited nature of the State's inquiry and the trial court's preclusion of the prosecutor's ability to use extrinsic evidence of the First Offender plea and sentence, there was little, if any, danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste

---

ruled that the "probative value is not substantially outweighed by either unfair prejudice or confusion of the issues with the jury." **«V10. 113»**

of time.

3. Finally, Lewis contends that trial counsel rendered ineffective assistance at the *Jackson-Denno* hearing. Prior to trial, a *Jackson-Denno* hearing was held regarding the statements made by Lewis while being transported back to Cobb County. At the hearing, Lewis argued that the statements were not voluntary since Lewis was under the influence of drugs and should be excluded on that basis. However, while Lewis's trial attorney had Lewis's medical records from the hospital to support his contention that his statements were not voluntary, the medical records were not certified, nor did he have a witness at the hearing to introduce those records. The trial court indicated that it was inclined to allow admission of Lewis's statements but reserved ruling pending a review of the certified medical records, which counsel later obtained and submitted to the court before trial. After reviewing the medical records, the trial court orally ruled on the morning of trial that

13

Lewis's statements were voluntary and admissible.[13]

At Lewis's motion for new trial hearing, one of the arguments made by Lewis's counsel was that trial counsel was ineffective because counsel was inadequately prepared for the *Jackson-Denno* hearing as counsel did not have a witness who could introduce the medical records into evidence or a certification of the records. In the order denying the motion for new trial, the court found that the claims that trial counsel "failed to have Defendant's medical records certified" and "failed to subpoena a witness to introduce those records" were "mooted by the Court's reservation of ruling on the motion and by subsequent review of the records." The court also ruled that Lewis "cannot show harm" because the trial court reviewed the medical records prior to making its ruling. The trial court also considered and rejected Lewis's arguments that trial counsel was ineffective by failing to provide additional authority by letter-brief after being invited to do so by the trial court.

---

[13] The trial court did not memorialize the oral ruling in a written order until several years later.

On appeal, Lewis argues that counsel rendered ineffective assistance in three ways: (1) counsel did not subpoena an expert witness to testify to Lewis's medical records regarding the narcotics in his system during the time Lewis made the statements; (2) counsel did not have Lewis's medical records certified by or before the *Jackson-Denno* hearing; and (3) counsel did not provide additional legal authority in a letter- brief when asked to do so by the court.

To prevail on these claims, Lewis must show both deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984). To show deficient performance, Lewis "must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." *Payne v. State*, 314 Ga. 322, 328–29 (2022). "The law recognizes a strong presumption that counsel performed reasonably," and Lewis "bears the burden of overcoming this presumption." *Blocker v. State*, 316 Ga. 568, 578 (2023) (citation and punctuation omitted). Lewis "must

show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id. (citation and punctuation omitted). To establish prejudice, Lewis "must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Zayas v. State*, 319 Ga. 402, 409 (2024) (citation and punctuation omitted). If either prong is not met, we need not address the other. Id.

As for the failure to subpoena an expert witness to introduce the medical records and the failure to have the medical records certified at the time of the *Jackson-Denno* hearing, Lewis cannot show prejudice. Even assuming that counsel was deficient in failing to have the medical records certified at the *Jackson-Denno* hearing or to have a witness present to introduce the records, it is undisputed that counsel subsequently submitted the certified medical records to the trial court and that the trial court, upon review, concluded that Lewis's statements were voluntary and admissible.

Moreover, to the extent Lewis is asserting that counsel was

deficient in failing to present an expert witness to support that Lewis's statements were involuntarily given, trial counsel testified that he investigated the claim, including consulting with an emergency room nurse about the drugs that were administered, and decided not to call an expert witness. Trial counsel stated that he learned "from [the] consultation" that "these drugs that he was given had a very short acting time and would not have been still effective on – by the time he got – gets driven back to the – to the county," so "that's the reason why I didn't go down the avenue of retaining an expert." This was a reasonable strategic decision, and counsel was not deficient. See *Guzman-Perez v. State*, 310 Ga. 573, 577 (2020) ("Typically, the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." (citation and punctuation omitted)).

As for the failure to provide a letter-brief, the trial court determined that trial counsel largely made the same arguments at the *Jackson-Denno* hearing that appellate counsel says should have been asserted in the letter-brief. And counsel testified at the motion

17

for new trial hearing that he further investigated the effects of narcotics and determined that Lewis was no longer under the effect of the narcotics at the time of transport. Moreover, counsel did additional legal research and because he did not find any cases supporting that Lewis's statements were involuntarily made under the circumstances of this case, he chose not to submit an additional letter-brief. "An attorney's decision about which defense to present is a question of trial strategy." *Anthony v. State*, 311 Ga. 293, 298 (2021) (citation and punctuation omitted). "Unless the choice of strategy is objectively unreasonable, such that no competent trial counsel would have pursued such a course, we will not second-guess counsel's decisions in this regard." Id. (citation and punctuation omitted). See also, *Rosenbaum v. State*, 320 Ga. 5, 11-12 (2024) (same). Because choosing not to provide additional authority by letter-brief after the hearing was a strategic decision and was not objectively unreasonable, counsel's failure to do so was not deficient.

*Judgment affirmed. All the Justices concur.*