308 Ga. 532
FINAL COPY

S20A0241.  WILLIAMS v. THE STATE.

BLACKWELL, Justice.

Richard Williams II was tried by a Fulton County jury and convicted of murder in connection with the strangulation death of Cory Robinson.[1] Williams's sole claim on appeal is that he was denied the effective assistance of counsel when his trial lawyer failed to present as a defense that Williams accidentally killed Robinson during consensual erotic asphyxiation. Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. At the time of the incident, Williams and Robinson were involved in a sexual

---

[1] Robinson was killed on January 30, 2015. On June 26, 2015, a Fulton County grand jury indicted Williams, charging him with murder with malice aforethought, murder in the commission of a felony (aggravated assault), and aggravated assault. Williams was tried in March 2016 and found guilty of malice murder. The jury did not return a verdict on the other counts. The trial court sentenced Williams to life imprisonment. Williams filed an initial motion for new trial in April 2016, and he filed an amended motion in December 2018. After a hearing, the trial court denied his motion for new trial in March 2019. Williams timely appealed, and this case was docketed to the term of this Court beginning in December 2019 and submitted for a decision on the briefs.

relationship and had been living together at an extended-stay hotel in Fulton County. On January 31, 2015, Robinson planned to move to Macon, where his mother and sister lived. But on that day, his body was found on the floor of the hotel room that he shared with Williams. His body was fully clothed and wrapped in a blanket, and there were trash bags over his head and feet.

Kelvin Spencer was a close friend of both Williams and Robinson. Spencer underwent dialysis treatments several times a week, and these treatments sometimes left him feeling "drained." On January 30, Spencer was on dialysis for the first half of the day. Around 5:00 p.m., he received text messages from Williams, saying, "I really need your help" and "please come alone." When Spencer met Williams at the hotel room, Williams looked angry and had scratches on his neck. Spencer saw Robinson lying on the floor in a "praying position." When Spencer asked, "What y'all do?" Williams responded, "I caught him f**king the drug man." Spencer did not believe Robinson was dead, and he helped Williams move clothes and other things to a U-Haul truck parked outside, in preparation

for a move.[2] Spencer asked whether Williams fought with Robinson, and Williams responded, "You see where he at, don't you?" About a day and a half later, when Spencer found out that Robinson, in fact, had died and asked Williams about it, Williams responded, "Oh, I got to go. I got to go. I got to go. I got to go."

The medical examiner, Dr. Michele Stauffenberg, testified that the cause of Robinson's death was "asphyxia due to strangulation." Robinson had a star-shaped abrasion in the center of his neck and two parallel abrasions on the right side, "mostly roughing up the superficial surface of the skin." Dr. Stauffenberg testified that there was evidence of a struggle "based on [the] injury that was found deep under the skin in the muscles of [his] neck." She explained that

> there was hemorrhage in and around [Robinson's] neck muscles in various layers and all the way down to the back of his airway and esophagus; as if his airway had been pushed up against the spinal column in the back of

---

[2] The State's theory, based on the testimony of Robinson's sister, was that Williams rented the U-Haul to help Robinson move to Macon. Spencer's testimony suggests that Williams instead used the U-Haul to move himself to a condo in Atlanta.

his neck, which caused bruising and bleeding into the neck muscles and into the structures of his neck.[3]

Furthermore, DNA belonging to Williams and possibly another person was found under Robinson's fingernails.

After the murder, Spencer continued to communicate with Williams. Among other things, Spencer sent several text messages to Williams on March 19, 2015, warning that the police were looking for Williams. One of these messages said, "911. FBI came to the house. They'll come back here. Hide the truck. Get out of town quick." Approximately two months after Robinson's death, Williams was finally located at another hotel by the fugitive unit of the Atlanta Police Department. He was arrested after a brief struggle.

Williams did not testify or present any evidence. Based on his lawyer's opening and closing arguments, the defense theory was that Spencer killed Robinson because he was jealous of Williams's relationship with Robinson.

---

[3] Dr. Stauffenberg could not determine what type of object was used to cause Robinson's injuries, but she testified it could have been "just about anything," including hands.

Williams does not dispute that the evidence is sufficient to sustain his conviction. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdict, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of murder with malice aforethought. See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Williams contends that he was denied the effective assistance of counsel when his trial lawyer, Morris Fair, failed to present a defense based on a theory that Robinson died accidentally while engaged in consensual erotic asphyxiation.[4] Williams alleges

---

[4] Specifically, Williams alleges, Fair acted deficiently when he (a) failed to investigate and present evidence that Robinson died accidentally; (b) failed to present an expert to explain the accidental death; (c) failed to ask the medical examiner about the possibility of an accidental death; (d) failed to call available witnesses to support an accident defense; and (e) failed to ask for jury charges on accident, reckless conduct, and/or involuntary manslaughter.

— as he did in his motion for a new trial — that the failure to present the erotic-asphyxiation defense stemmed from Fair's discomfort with the topic of homosexual BDSM[5] activity, as well as Fair's ongoing problems with the State Bar of Georgia.[6] According to Williams, Fair knew that the defense theory he presented — that Spencer killed Robinson — was untrue, but he did not want to listen to Williams's explanation for Robinson's death and kept pushing the false theory. Williams asserts that he acceded to Fair's strategy only

---

[5] BDSM is a composite acronym derived from the phrases "bondage and discipline," "dominance and submission," and "sadism and masochism."

[6] While representing Williams, Fair was the subject of disciplinary proceedings brought by the State Bar, and he was eventually disbarred in February 2017. See In the Matter of Fair, 300 Ga. 655 (797 SE2d 490) (2017). These disciplinary proceedings and disbarment, however, were unrelated to Fair's representation of Williams. There is also no evidence that Fair's disciplinary proceedings adversely affected his work on Williams's case or in any way undermined his defense strategy. Nothing suggests that Fair would have represented Williams any differently absent those disciplinary proceedings. Further, as Williams acknowledges, post-trial disbarment "does not provide a basis for presuming deficient performance." See Shiver v. State, 276 Ga. 624, 626 (581 SE2d 254) (2003). See also Anthony v. State, 302 Ga. 546, 555 (807 SE2d 891) (2017) ("Disbarment alone is not sufficient to change the standard for ineffective assistance."). Because Fair's disciplinary problems do not suggest a deficient performance with respect to Williams, they offer little support to Williams's ineffective assistance claim.

through ignorance and that he did not know that a defense based on consensual erotic asphyxiation was available.

At the hearing on his motion for new trial, Williams testified and presented other witnesses to support his theory of the case. Williams explained that he was on a drug binge at the time of Robinson's death and was under the influence of several controlled substances, including methamphetamine and cocaine. He claimed that both Spencer and Robinson were in the room with Williams during that time and also were using drugs. Williams testified that he was performing an erotic asphyxiation maneuver on Robinson when Robinson passed out. Williams did not realize right away that Robinson died because, he said, Robinson "used to pass out all the time" and "we all passed out all the time. It's natural." Williams further explained that he always engaged in erotic asphyxiation and scratching during sex.

Williams testified that, after he had sex with Robinson, he checked his e-mail and saw a message that the condo he had rented was ready for move-in, so he asked Spencer to help him put his

belongings into a U-Haul truck parked outside and help him move. Before leaving the room, he and Spencer dressed Robinson because, Williams explained, "it was extremely cold around that time of the year," and they were concerned about Robinson's privacy because opening the hotel door would reveal the inside of the room to anyone walking outside. Williams testified that he and Spencer then went to purchase some food and run some errands related to the move. It was only after they got back to the hotel, Williams said, that he realized Robinson was dead. Williams panicked, passed out for a brief period, and then got up and left.

Williams further testified that, when he tried to communicate to Fair the version of events described above, Fair did not want to listen to him and "shut [him] down." According to Williams, Fair used a homophobic slur and said "he was a Christian and he don't get into that." Williams further testified that he eventually acquiesced in the defense pushed by Fair. Williams acknowledged that he could have retained another attorney at any time, but Fair

"was very convincing and very confident that his way was the way to go. And I trusted his ability to defend me."[7]

Fair gave a very different account. At the hearing, Fair testified that, during their first conversation, Williams admitted to killing Robinson but never said it was an accident. After a thorough examination of the documents provided in discovery, they decided to point the finger at Spencer as the person who might have killed Robinson, in an effort to create reasonable doubt in the jurors' minds. Fair asserted that he "wasn't uncomfortable" discussing Williams's sex life, but he and Williams "didn't have a lot of discussion" about it and never talked about "this freaky, kinky sex or anything like that." Blaming Spencer "was the only route we

---

[7] In addition to testifying on his own behalf, Williams presented several other witnesses to support the notion that his lawyer could have pursued a colorable defense based on consensual erotic asphyxiation: (a) an expert sociologist who testified, among other things, that BDSM activity — including bruising, scratching, and erotic asphyxiation — is not uncommon in the gay community, that erotic asphyxiation can include intentional loss of consciousness, and that it sometimes can lead to "people accidentally killing themselves and their partners"; (b) two of Williams's prior sexual partners who testified, essentially, that Williams engaged in sometimes-violent BDSM activity with them, including choking; and (c) a medical examiner who had reviewed Dr. Stauffenberg's autopsy report and concluded that Robinson's death was consistent with being caused by erotic asphyxiation.

could go," Fair said, and "the only route we discussed." Fair also said that he did not recall "any time we weren't able to talk freely about this case at all."

To obtain relief on a claim of ineffective assistance of counsel, a defendant generally must show both that his lawyer's performance was deficient and that this deficient performance prejudiced his defense. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). An attorney performs deficiently under Strickland if he discharges his responsibilities at trial in an "objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Thomas v. State, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018) (citation and punctuation omitted). Prejudice is shown by demonstrating "a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." Miller v. State, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). "If either Strickland prong is not met, this Court need not examine the

other prong." <u>Palmer v. State</u>, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018).

Williams's entire ineffective assistance claim rests on the fact that Fair did not pursue an erotic-asphyxiation defense. But the record shows that Fair had no reason to investigate or pursue this defense. Fair testified that, when he asked Williams about what happened, Williams told him that he killed Robinson but never said that he did so unintentionally while performing erotic asphyxiation. Fair also testified that he and Williams were always able to discuss the case freely, that they thoroughly examined the discovery provided by the State, and that they mutually decided to pursue the strategy of blaming the killing on Spencer. Although Williams's testimony contradicted that of Fair, the trial court implicitly credited Fair's version of events when it denied Williams's ineffective assistance claim, and we accept the trial court's factual findings. See <u>Jordan v. State</u>, 305 Ga. 12, 17 (3) (823 SE2d 336) (2019) (unless "clearly erroneous," a trial court's factual findings made in deciding an ineffective assistance claim will be affirmed,

which means that we will not reverse such findings "if there is any evidence to support them").[8]

Because, as the trial court implicitly found, Williams never told Fair about engaging in erotic asphyxiation, Fair did not act unreasonably when he did not investigate or develop on his own this not-so-obvious line of defense. See Strickland, 466 U. S. at 691 (III) (A) (explaining that the reasonableness of trial counsel's investigation decisions "depends critically" on "information supplied by the defendant"); Parker v. State, 305 Ga. 136, 143 (4) (c) (823 SE2d 313) (2019) ("[A] lawyer's performance is not deficient for failing to discover information that easily could have been provided by his client."). See also Wiggins v. State, 280 Ga. 627, 630 (2) (a) (632 SE2d 80) (2006) (trial counsel did not act deficiently when she

[8] The trial court did not make any express credibility determinations or factual findings when it denied Williams's motion for a new trial. But "in the absence of explicit factual and credibility findings by the trial court, we presume implicit findings were made supporting the trial court's decision." Davis v. State, 306 Ga. 430, 432-433 (831 SE2d 804) (2019). See also White v. State, 287 Ga. 713, 723 (4) (b) (699 SE2d 291) (2010) (although the trial court made no factual findings or credibility determinations on ineffective assistance claim, the court was authorized to conclude that trial counsel's testimony was more credible than defendant's).

made a strategic decision to raise a particular defense in reliance on the defendant's representations). Fair's lack of investigation is all the more reasonable considering Williams's ready acceptance of the theory that Spencer killed Robinson. For the foregoing reasons, Williams failed to show ineffective assistance of counsel, and we affirm.

Judgment affirmed. All the Justices concur.

DECIDED APRIL 20, 2020.
Murder. Fulton Superior Court. Before Judge Russell.
*Lauren B. Shubow*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, F. McDonald Wakeford, Dustin J. Lee, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.