315 Ga. 202
FINAL COPY

S22A0875.   EAKER v. THE STATE.

WARREN, Justice.

After a jury trial in October 2018, Darrell Eaker was convicted of malice murder and other crimes in connection with the shooting death of Audra Eaker.[1]  Eaker raises two claims of error on appeal:

---

[1] The crimes occurred on December 27, 2016.  On March 14, 2017, a Cherokee County grand jury indicted Eaker on six counts: malice murder; felony murder; aggravated assault (family violence); possession of a firearm during the commission of a felony; criminal damage to property in the first degree; and discharge of a gun near a highway or street.  After a jury trial from October 22 to 29, 2018, the jury found Eaker guilty on all counts except felony murder.  With regard to the felony murder count, the trial court instructed the jury that if it found Eaker guilty of malice murder, it was not "authorized to find [him] guilty on [the felony murder] count."  But see *Hendrix v. State*, 298 Ga. 60, 66-67 (779 SE2d 322) (2015) (explaining that a jury is authorized to find a defendant guilty of both malice and felony murder, but that where "there [is] but a single victim, he cannot be convicted and sentenced on both counts, and the felony murder count must be vacated as mere surplusage").  Eaker does not raise any enumeration regarding the trial court's charge.

On October 29, 2018, Eaker was sentenced to life in prison without the possibility of parole for malice murder, five years to be served consecutively for possession of a firearm during the commission of a felony, ten years to be served consecutively for criminal damage to property in the first degree, and twelve months to be served consecutively for discharge of a gun near a highway or street.  The aggravated assault (family violence) count was merged for sentencing purposes with the malice murder count.  Eaker timely filed a

that (1) Eaker received constitutionally ineffective assistance of counsel; and (2) the trial court erred in denying Eaker's motion for new trial on the basis of newly discovered evidence. For the reasons explained below, we affirm.

1. Eaker does not challenge the sufficiency of the evidence supporting his convictions. As such, we review only the evidence presented at trial that is relevant to Eaker's enumerations of error and any factual background needed to provide context for them.[2] That evidence included the following. Eaker and Audra had been married for 23 years and began experiencing marital issues in 2016, partly due to Eaker's alcohol use and his suspicion that Audra was

---

motion for new trial on November 7, 2018, which he amended on April 6, 2019, through new counsel. On June 7, 2021, following a hearing three days earlier, the trial court denied Eaker's motion for new trial, as amended. Eaker timely filed a notice of appeal on June 10, 2021. The case was docketed in this Court to the August 2022 term and submitted for a decision on the briefs.

[2] In *Dugar v. State*, 314 Ga. 376, 377 (877 SE2d 213) (2022), we explained that because the appellant did "not challenge the sufficiency of the evidence to support her convictions," and because, under *Davenport v. State*, 309 Ga. 385, 398-399 (846 SE2d 83) (2020), "[w]e no longer routinely review evidentiary sufficiency sua sponte, except with respect to murder convictions resulting in the death penalty," we would note "only those portions of the record necessary to address her claims of error."

engaged in infidelity. During this period, the couple had several serious arguments, including one in which Eaker waved a gun in front of Audra and several which involved physical altercations.

On December 27, 2016, the couple attended a party and arrived around 7:00 p.m. At the party, Eaker paced around, walked in and out of the house several times, seemed nervous and very talkative, and continued to drink throughout the night before Audra stopped him. Eaker and Audra left in her car, with Audra driving and Eaker in the passenger seat. Eaker testified in his defense at trial and stated the following. During the car ride back to their home, Audra told Eaker she felt embarrassed at the party because "[he was] acting weird, everybody was asking is [he] okay." At approximately 9:30 p.m., while driving along Highway 92 in Cherokee County, Audra told him he had embarrassed her for the last time, and "[s]he said, we're done; we're getting a divorce." Eaker accused her of having an extramarital affair. According to Eaker, Audra owned an H&K .45-caliber handgun that was in the car's glovebox that night. Eaker removed it, racked the slide, and put it to his own head,

3

closing his eyes. Audra admitted to having and wanting to continue an affair. In response, Eaker "pulled the trigger," and when he opened his eyes, Audra's body was slumped over and bleeding. Eaker added, "I don't remember firing eight [rounds]. I remember pulling the trigger." The Eakers' car came to a stop in the middle of Highway 92. A witness whose car stopped behind theirs testified that she saw "a very bloody woman" inside the car. Eaker got out of the car and said, in an "[e]erily calm" manner, "I've done something really wrong and I'm going to jail for a very long time."

Officers responded to the scene shortly thereafter. They found Audra dead inside her car. The car had "four projectile holes in the driver's-side front door," and a gun was on the passenger side floorboard. Audra's wounds were "consistent with five different gunshot wounds," and a GBI forensic pathologist testified at trial that Audra "died of multiple gunshot wounds of the head." Evidence introduced at trial showed that the gun had an empty eight-round magazine, no bullet in the chamber, and the safety was off. A GBI agent testified that the gun's hammer was set to be ready to fire,

4

and it was semiautomatic, meaning one bullet leaves the chamber for each pull of the trigger. Eaker was arrested at a nearby parking lot where he was found smelling of alcohol and slurring his speech. Gunshot residue on his hands matched the gun from the car's floorboard.

2. Eaker contends his trial counsel rendered constitutionally ineffective assistance of counsel for failing to investigate the possibility that the gun used in the shooting accidentally fired multiple times and for not presenting the defense of accident to the jury.[3] His claim fails, however, because he has not shown that his counsel's performance was deficient.

(a) As background, in Eaker's amended motion for new trial, he argued that he received ineffective assistance because trial counsel failed to properly examine the gun used in Audra's shooting and present accident as an alternative theory. Eaker asserted that "[i]t was well known that [he] 'tinkered' with his guns" and that

---

[3] Eaker requested, and the trial court gave, a charge on voluntary manslaughter.

"[l]ogically, any instrument can be assumed subject to malfunction if improperly assembled or modified." Eaker also asserted that evidence showed the sequence of bullets discharged from the gun was arced, which could have been the result of it becoming uncontrollable and "discharging repeatedly" from a single trigger pull. Eaker argued trial counsel improperly limited his investigation, never considering alternative theories such as a possible gun malfunction.

At the hearing on Eaker's motion, trial counsel testified that he had 21 years of experience as a criminal defense lawyer working on murder cases and on jury trials and that he spent hours with Eaker preparing for trial, during which time they discussed the gun. Counsel testified that he reviewed the evidence in the case in preparing for trial and that he did not "recall [Eaker] specifically saying that [the gun] had malfunctioned," had no "definitive memory" of Eaker telling him about disassembling it, and would have had the gun examined if he had received information that its parts had been modified or that it "was prone to misfiring."

6

Eaker presented testimony from a firearms expert who testified that normally, after emptying a magazine, a handgun's slide will be locked to the rear, and pointed out that the slide of the gun used in the shooting was locked to the forward position. The expert testified that he reviewed the pretrial report from the GBI analyst and that the report did not document "any kind of alteration to the weapon." The expert testified that he field-stripped the gun and "looked inside the internal mechanism of the weapon itself." He noted a possible modification to the gun's hammer and "trigger assembly" due to the relative shininess of the parts, but testified that it did not malfunction at all during his field test. He also testified that misassembling a handgun could cause it to "slamfire," meaning it would fire multiple times with a single pull of the trigger. But on cross-examination, he acknowledged that, although he had testified on direct examination that the gun "may be altered in some way," he was "not sure if it actually ha[d] been altered."

A GBI expert who examined the gun during pretrial investigations testified at the hearing that the gun's safety and

7

hammer appeared unaltered, its parts were functioning, the field tests he conducted never produced a misfire, and no one had suggested during the investigation that it had been altered. The GBI expert also testified that a handgun that had malfunctioned before would continue to do so and would not operate normally later.

(b) To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. See *Sullivan v. State*, 308 Ga. 508, 510 (842 SE2d 5) (2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Bates v. State*, 313 Ga. 57, 63 (867 SE2d 140) (2022) (citation and punctuation omitted).

To establish deficient performance, a defendant must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d

8

637) (2013). This requires a defendant to overcome "the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Simmons v. State*, 299 Ga. 370, 375 (788 SE2d 494) (2016) (citation and punctuation omitted). A defendant attempting to carry his burden "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id. (citation and punctuation omitted).

To establish prejudice, a defendant must show a reasonable probability that, but for trial counsel's deficiency, the result of the trial would have been different. See *Patterson v. State*, 314 Ga. 167, 171 (875 SE2d 771) (2022). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sullivan*, 308

9

Ga. at 510 (citation and punctuation omitted). "[T]his burden is a heavy one." *Bates*, 313 Ga. at 62-63 (citation and punctuation omitted).

Eaker argues that trial counsel was constitutionally ineffective for failing to properly investigate the gun used in Audra's shooting and for failing to raise the defense that the gun accidentally misfired multiple times based on a single pull of the trigger. However, Eaker has failed to show that trial counsel acted objectively unreasonably in failing to investigate this defense. To begin, and contrary to Eaker's assertion in his brief, there was no evidence presented at the motion-for-new-trial hearing or at trial that it was "well known that Mr. Eaker 'tinkered' with his guns."[4] Moreover, Eaker's expert testified at that hearing that the GBI's pretrial report on the murder weapon did not contain any information stating that the gun had been modified or disassembled. Eaker's trial counsel testified that

---

[4] Although Eaker asserts on appeal, as he did in his amended motion for new trial, that it was "well known that [he] 'tinkered' with *his* guns," (emphasis supplied) we note that at trial, Eaker testified that the gun belonged to Audra and was in the glove compartment of her car at the time of the crimes.

he reviewed the evidence in the case when preparing for trial, which would have included the GBI report on the gun, but that report would not have alerted trial counsel to the possibility of the gun misfiring due to a modification. Moreover, at the hearing on Eaker's motion for new trial, Eaker's trial counsel testified that he spent hours with Eaker preparing for trial, which included discussions about the gun, but that he could not definitively recall Eaker telling him that the gun had misfired or been modified. Trial counsel added that if he had received such information, he would have had the gun examined before trial.

Eaker also points to his expert's testimony at the motion-for-new-trial hearing that the five bullet wounds to Audra's head "arced" "up her head" "in almost a straight line," as well as his testimony that the three bullets that missed Audra hit the roof, sun visor, and windshield of the car, as evidence that should have alerted trial counsel to the possibility that the gun misfired. However, although Eaker's expert described the pattern of shots as "erratic," he noted that the five bullets that struck Audra did so within three

11

to four inches of each other, and he did not testify that the pattern of the shots indicated a misfire.  Moreover, he testified that he was not even "sure" if the gun had been altered in any way, and Eaker's theory of accidental misfiring was premised on the gun having been altered.

"Concerning the adequacy of investigations, counsel has a duty to make reasonable investigations . . . [with] deference . . . given to counsel's judgments." *Bonner v. State*, 314 Ga. 472, 475 (877 SE2d 588) (2022) (citation and punctuation omitted).  And "what investigation decisions are reasonable depends critically" "on information supplied by the defendant." *Strickland*, 466 U.S. at 691.  In this regard, we have held that "a lawyer's performance is not deficient for failing to discover information that easily could have been provided by his client." *Parker v. State,* 305 Ga. 136, 143 (823 SE2d 313) (2019).  Moreover, where "the record shows that [counsel] had no reason to investigate or pursue [a] defense," trial counsel does not perform deficiently in not pursuing it.  *Williams v. State*, 308 Ga. 532, 536 (842 SE2d 1) (2020).

Here, Eaker's counsel testified that, if he had been informed that the gun had been modified or had misfired, he would have had it examined, supporting the conclusion that he was not told of such occurrences. In addition, given that the GBI's pretrial report did not mention the possibility of the gun having been modified or being prone to misfire, and given that Eaker's expert did not specifically testify that the "arc" of the shots indicated a misfire and testified that he was not even "sure" that the gun had been modified, we conclude that counsel did not act objectively unreasonably when he did not investigate the possibility of the gun misfiring. See *Williams*, 308 Ga. at 536 (holding that where "the record shows that [counsel] had no reason to investigate or pursue [a] defense," trial counsel did not perform deficiently in not pursuing it).

3. Eaker contends that the trial court erred in denying his motion for new trial under OCGA § 5-5-23 on the basis of newly discovered evidence. Eaker's contention fails because it was not preserved for appellate review: he did not raise this claim in his amended motion for new trial and the transcript from the hearing

13

on that motion shows that Eaker did not raise or argue this claim. Moreover, in denying Eaker's motion, the trial court did not rule on such a claim and, instead, ruled against Eaker's motion on the two grounds that he did raise: that he was entitled to a new trial on the general grounds and because his trial counsel had been constitutionally ineffective. "An appellate court's consideration of such a claim is dependent upon a trial court's having first considered the evidence and made particular findings of fact." *Harris v. State*, 313 Ga. 872, 877 (874 SE2d 73) (2022). Consequently, Eaker's claim for a new trial on the basis of newly discovered evidence was not preserved for appellate review. *McClendon v. State*, 299 Ga. 611, 616 (791 SE2d 69) (2016) ("Because [appellant] raises an issue on appeal that was not presented or ruled upon by the trial court, his argument is not preserved for review by this Court.").

*Judgment affirmed. All the Justices concur, except Pinson, J., not participating.*

14

Decided November 29, 2022.

Murder. Cherokee Superior Court. Before Judge Salmon, Senior Judge.

*Jeffrey S. Williams*, for appellant.

*Shannon G. Wallace, District Attorney, Lara A. Snow, Cliff Head, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.