308 Ga. 131
FINAL COPY

S19A1403. WILKINS v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Nathaniel Wilkins was convicted of two counts of malice murder in connection with the shooting deaths of Forrest Ison and Alice Stevens. He appeals, arguing that the trial court erred by admitting into evidence an alleged adoptive admission and by denying three motions for a mistrial. He also argues that his trial counsel provided ineffective assistance by not objecting when the trial court gave an inapplicable jury instruction about accomplice corroboration and defined aggravated assault three times. We affirm.[1]

---

[1] The crimes occurred on November 3, 2013. On October 22, 2014, a Chatham County grand jury indicted Appellant and Michael Jones for two counts each of malice murder, felony murder based on aggravated assault, and aggravated assault. Their cases were severed for trial. After an interlocutory appeal was taken by the State, this Court affirmed the trial court's pretrial order that certain statements made by Jones were not admissible in Appellant's trial under the co-conspirator hearsay exception. See *State v. Wilkins*, 302 Ga. 156, 162 (805 SE2d 868) (2017). Appellant was then tried from April 10 to 14, 2018, and the jury found him guilty of all charges. The trial court sentenced Appellant to serve two consecutive sentences of life in prison without the possibility of parole for malice murder, vacated the felony murder counts, and merged the aggravated assault counts into the malice murder convictions. Appellant filed a timely motion for new trial, which he later amended twice with new counsel.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Some time before the murders, Appellant worked with Ison and Stevens at a restaurant in Savannah. Ison was the executive chef; his girlfriend Stevens was part of the wait staff; and Appellant was a line cook. Due to Appellant's poor performance, Ison fired him. Appellant then found a job at a different restaurant, where he worked with Michael Jones, who was dating Appellant's sister Tracey Burgess.

According to Burgess, on the night of November 3, 2013, Appellant asked her to drive him and Jones to "take care of something." Appellant directed Burgess to drive to an intersection in Savannah, where Ison and Stevens then drove by in a car. Appellant told Burgess to follow the car. Burgess, Appellant, and Jones followed Ison and Stevens to a gas station, waited while Ison pumped gas and bought some items at the convenience store, and then continued to

---

After an evidentiary hearing, the trial court denied the motion on April 4, 2019. Appellant then filed a timely notice of appeal, and the case was docketed to the August 2019 term of this Court and submitted for decision on the briefs. At his separate trial, Jones was also found guilty of all charges; we affirmed his convictions in *Jones v. State*, 305 Ga. 750 (827 SE2d 879) (2019).

follow them to their home. Burgess parked in front of the house. As Appellant and Jones got out, Appellant said that they were going to rob Ison and Stevens; Appellant had a brown and gray gun, and Jones had a black gun.[2] Appellant and Jones ran behind bushes in front of the house. When Ison and Stevens got out of their car, Appellant and Jones approached them. Appellant pointed his gun at Stevens, and she yelled, "No, Nate!" three or four times. Appellant then shot her, and she fell to the ground. Jones pointed his gun at Ison, who threw his car and house keys to Jones. Jones said that was not what he came for, and he then shot Ison several times.

At that point, Burgess drove away, leaving Appellant and Jones behind. Several of Ison and Stevens's neighbors heard multiple gunshots, and two neighbors heard a woman scream. One of the neighbors saw two young, black men running from the scene; one wore a light gray hoodie, and the other wore a black hoodie.[3] Burgess pulled

---

[2] Burgess also described the gun that Appellant owned as "Army color," with silver, gray, and brown. Appellant's former co-worker testified at trial that several years earlier, Appellant had shown the co-worker his .45-caliber, camouflage-colored Para Ordnance pistol.

[3] Appellant, who is black, was 25 years old at the time of the crimes.

into the parking lot of a nearby nursing home, where Appellant and Jones caught up and got in the car. They drove back to the house where Burgess and Jones were staying. Jones later showed the man with whom they were staying a gun with an "army fatigue" green, black, and brown finish that Jones had stored in the closet. After the shooting, Burgess heard Appellant telling people that "he got rid of some germs and bacteria."

Ison and Stevens were found lying on the steps to the side door of their house. Ison was already dead by the time EMTs arrived; Stevens died shortly thereafter. Ison had been shot three or four times; he had bullet entrance wounds on his chin, his chest, and the back of his head, and a bullet graze wound on his hand. The wound to his head was caused by a .22-caliber bullet; the wound on his chin was bigger than the wounds on his head and chest. Stevens had been shot on the right side of her head and on her chin with a larger caliber bullet, similar to the bullet that caused Ison's chin wound. Three .45-caliber cartridge cases and two .45-caliber bullets were found near the bodies.

---

According to Burgess, Jones, who was also 25, was wearing a dark hoodie when he shot Ison. She testified that Appellant was not wearing a hoodie.

The bullets were consistent with being fired from a Para Ordnance .45-caliber pistol.

Joris Cooper, who was Appellant and Jones's restaurant co-worker, testified to the following. Shortly after the murders, Jones showed Cooper a gun. The next night, Cooper was standing outside the restaurant with Jones when Appellant drove up. Jones walked to the back of the car and called Cooper over. Jones opened the trunk, showed Cooper a t-shirt with blood on it, and said: "This [is] the t-shirt we used to wipe the blood and our prints . . . off the gun." Appellant was standing by the door of the car, within earshot. While Jones was talking about the shirt, Appellant looked at Jones, turned and gave Cooper a "quick look," and then turned back to Jones. Some time after that incident, Cooper was walking outside when Appellant drove up to him. Appellant said that another co-worker had asked if Appellant committed the murders; Appellant then said, "he better keep his mouth closed or his motherf**king ass going to come up missing too." Cooper gave Appellant a look to indicate, "all right, man," and Appellant drove away.

Neither Appellant nor Jones testified at Appellant's trial. Appellant's main defense theory was that Burgess and Cooper, the State's key witnesses, were not reliable. Burgess had changed her story about the night of the murders several times, and she had been indicted separately on the same charges faced by Appellant in connection with the murders, plus two additional counts. In exchange for her truthful testimony, the State agreed to let her plead guilty to just one count of attempted armed robbery. Cooper testified that he was hoping to receive reward money for providing information about the murders.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the two murders of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560)

(1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. As discussed above, Cooper testified that Jones showed him a t-shirt in the trunk of the car Appellant was driving and said: "This [is] the t-shirt we used to wipe the blood and our prints . . . off the gun." The State offered that testimony as an adoptive admission by Appellant. At trial, before opening statements and outside the presence of the jury, Cooper was questioned about his proposed testimony. Based on his answers (which were substantially similar to the testimony recounted in Division 1 above that he then gave before the jury), the trial court concluded that Jones's statement was admissible because it had been adopted by Appellant through Appellant's silence. The court found that Appellant was looking at and within earshot of Jones when Jones made the statement, adding, "[Appellant] couldn't have not heard it." The court also pointed to the incriminating nature of Jones's statement and the fact that "the shirt

7

is in the car [Appellant] drives up in."[4]

As this Court recently explained, under Georgia's current Evidence Code, a defendant's silence may, in certain circumstances, communicate that he has adopted another person's statement as true, making that statement admissible under OCGA § 24-8-801 (d) (2) (B), which defines "admissions" not excluded by the hearsay rule when offered against a party to include "[a] statement of which the party has manifested an adoption or belief in its truth." See *State v. Orr*, 305 Ga. 729, 740 (827 SE2d 892) (2019).[5] Looking to Eleventh Circuit case law for guidance, *Orr* further explained:

> For evidence to qualify as a criminal defendant's adoptive admission under Rule 801 (d) (2) (B), the trial court must find that two criteria were met: first, that "'the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond,'" and second, that "'there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.'" *United*

---

[4] In deciding the pretrial appeal in this case, we noted that the trial court had reserved ruling on this adoptive admission issue, so that issue was not then before us. See *Wilkins*, 302 Ga. at 157 n.4.

[5] As discussed at length in *Orr*, under Georgia's old Evidence Code, this Court had created a blanket prohibition on the admission of evidence of a criminal defendant's "'silence or failure to come forward,'" but that categorical exclusionary rule "was abrogated by the new Evidence Code." *Orr*, 305 Ga. at 739 (citation omitted).

*States v. Jenkins*, 779 F2d 606, 612 (11th Cir. 1986) (citation omitted).

*Orr*, 305 Ga. at 740. See also *Westbrook v. State*, __ Ga. __ (__ SE2d __) (2020).[6] Before admitting a statement as an adoptive admission, the trial court must determine, as a preliminary question, whether these two criteria have been met. See *United States v. Carter*, 760 F2d 1568, 1580 (11th Cir. 1985). The jury is then responsible for making the ultimate determination of whether the defendant adopted the statement as true. See *Jenkins*, 779 F2d at 613 n.4.[7] The circumstances to be considered include any "physical or psychological impediments to the party's responding to the statement (for example,

---

[6] OCGA § 24-8-801 "is materially identical to Federal Rule of Evidence 801, so we look for guidance to federal case law applying the federal rule." *Orr*, 305 Ga. at 740. See also id. at 736 ("Where rules in the new Evidence Code are materially identical to Federal Rules of Evidence, we look to federal appellate law, and in particular the decisions of the United States Supreme Court and the Eleventh Circuit, to interpret them, instead of following our own precedent issued under the old Evidence Code.").

[7] The jury may be instructed on this issue. See *Carter*, 760 F2d at 1580 n.5 (quoting the instruction that was given to the jury in that case). Appellant did not request such an instruction, however, and he has not identified any authority requiring such an instruction to be given without a request. See *Jenkins*, 779 F2d at 613 n.4 (noting that the defendant did not request a jury instruction on adoptive admissions and declining to decide whether one was required in those circumstances). See also *United States v. Joshi*, 896 F2d 1303, 1313 & n.12 (11th Cir. 1990) (holding that the failure to give such an unrequested instruction was not plain error).

circumstances showing that a party feared to speak would negate any inference that the party agreed or adopted the statement)." Paul S. Milich, Georgia Rules of Evidence § 18:4, at 709 (2019-2020 ed.). See also *United States v. Hale*, 422 U.S. 171, 176-177 (95 SCt 2133, 45 LE2d 99) (1975) (explaining why the circumstances of arrest and custodial interrogation may undermine a claim that a suspect's silence was intended as an admission).

Appellant argues that he could not be expected to respond to Jones's statement because it was ambiguous and he did not know what Jones may have told Cooper in any conversation leading up to the statement. However, even if Appellant did not have the full context of Jones and Cooper's prior conversation, the trial court could reasonably determine that a statement referring to a bloody shirt in the trunk of the car that Appellant drove up in and was standing next to as the shirt "we" used to wipe blood and fingerprints off a gun is the kind of statement that would normally prompt an innocent person to clarify that he was not part of the "we."

Likewise, the trial court's conclusion that Appellant heard,

understood, and acquiesced in Jones's statement is supported by Cooper's description of Appellant's position standing by the car door within earshot, as well as the fact that Appellant looked at Jones, briefly at Cooper, and then back at Jones while Jones was speaking. And there is no indication that any particular circumstances impeded Appellant from speaking. Thus, the trial court did not abuse its discretion in determining that Jones's statement was admissible under OCGA § 24-8-801 (d) (2) (B). See, e.g., *Jenkins*, 779 F2d at 612-613 (holding that one conspirator's statement to a person, made in a bedroom with the defendant present, about the need to finish paying for the cocaine received in Miami was an adoptive admission by the defendant, who remained silent); *Carter*, 760 F2d at 1579 (holding that one conspirator's statement to a person, made in the front seat of a car, describing the conspiracy's smuggling activities was an adoptive admission by the other two conspirators, who remained silent in the back seat).[8]

---

[8] Citing *Orr*, Appellant also argues that his silence in response to Jones's statement had little probative value and was unfairly prejudicial and so should have been excluded under OCGA § 24-4-403. See *Orr*, 305 Ga. at 742 ("'[I]n most

3. Appellant next contends that the trial court abused its discretion by denying three mistrial motions based on the admission of alleged hearsay. "'Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial.'" *Childs v. State*, 287 Ga. 488, 492 (696 SE2d 670) (2010) (citation omitted). As explained below, in this case, the trial court acted within its discretion in denying each motion.[9]

(a) The prosecutor began questioning Cooper about the gun that Jones showed him in this way: "At first, tell me what happened, and

---

circumstances silence is so ambiguous that it is of little probative force.'" (quoting *Hale*, 422 U.S. at 176)). Pretermitting whether Appellant properly raised this argument in the trial court, it fails. The trial court did not abuse its discretion in ruling that under these circumstances (which were very different than the ones in *Hale*), the jury could find that Appellant's silence was *not* ambiguous but rather indicated his adoption of Jones's incriminating statement about the crimes. Such an adoptive admission was highly probative and not unfairly prejudicial. See *Anglin v. State*, 302 Ga. 333, 337 (806 SE2d 573) (2017).

[9] Because we conclude that the trial court did not abuse its discretion when it refused to grant Appellant's mistrial motions, we need not address the State's argument that Appellant failed to preserve his claims by not renewing his motions in a timely manner after the court gave curative instructions, nor do we address Appellant's argument that his counsel was ineffective for failing to renew his motions. See *Coleman v. State*, 301 Ga. 720, 723 n.4 (804 SE2d 24) (2017).

you can show me, but don't say what anybody might have said. With those parameters, tell [the jurors] what happened." Cooper answered, "I guess . . . a guy walked up on me and showed me the murder weapon." He then clarified that the "guy" was Jones. Appellant objected to Cooper's use of the term "murder weapon" and moved for a mistrial, arguing that the term was based on hearsay from Jones. The trial court denied the motion for mistrial, but told the jury "to disregard the statement of this witness regarding the weapon being a murder weapon." The court also asked the jurors if the instruction was clear and if they could follow it; they answered yes to both questions.

Cooper's use of the term "murder weapon" may have been inadmissible because it apparently was based on hearsay — what Jones told him about the weapon — and the State did not identify any applicable hearsay exception. See *Kirby v. State*, 304 Ga. 472, 478 (819 SE2d 468) (2018) ("[A] witness cannot use inadmissible hearsay to demonstrate personal knowledge of a matter."). However, it was a passing reference that was contrary to the directions given by the prosecutor; the statement did not link the weapon to Appellant; the

jury was promptly instructed to disregard the comment; and the jurors affirmatively indicated to the court that they would follow the instruction. Under these circumstances, the trial court acted within its discretion in denying the motion for mistrial. See, e.g., *Davis v. State*, 308 Ga. __ (__ SE2d __) (2020); *Childs*, 287 Ga. at 492-493.

(b) While questioning Cooper about the adoptive admission discussed in Division 2 above, the prosecutor asked, "You go over there. You get summoned over there by [Jones], and tell me how this t-shirt comes into play. Tell [the jurors]. It's important." Cooper responded, "He was showing me the shirt — he had done told me before, but he was showing me the shirt that he said they used to wipe the gun or the — ." Appellant objected and moved for a mistrial on the ground that Cooper was improperly corroborating Appellant's adoptive admission with testimony about what Jones said while Appellant was not present. The trial court denied the mistrial motion, but told the jury "to disregard the last statement made by this witness." The court asked if the jurors could do that; they said yes.

Cooper's statement was ambiguous: it was not clear to what

14

Cooper was referring that Jones had told him before. To the extent the statement meant that Jones had told Cooper in an earlier conversation, during which Appellant was not present, that they used the shirt to wipe the gun, the statement may have been inadmissible hearsay. However, Cooper's comment was brief, ambiguous, and not directly responsive to the prosecutor's question. And again the trial court gave a curative instruction and ensured that the jury would follow it. Thus, the court acted within its discretion in denying the mistrial motion. See *Davis*, 308 Ga. at 754; *Childs*, 287 Ga. at 493.

(c) Finally, when the prosecutor was questioning the lead detective about his investigation, the following exchange occurred:

> PROSECUTOR: Okay. [The case] had been unsolved and dead-ended for a while; is that accurate?
> DETECTIVE: Yes.
> PROSECUTOR: You were working on it, but you didn't have any arrests; is that fair to say?
> DETECTIVE: No. We continued to work on it.
> PROSECUTOR: Sure. What did you do next?
> DETECTIVE: In March of that year we got information of some possible suspects.

Appellant objected and moved for a mistrial on the ground that the detective's final statement was hearsay and violated the

Confrontation Clause. The trial court denied the motion, but instructed the jury to disregard the detective's last statement. The court asked if all of the jurors could do that; they said yes.

The import of the disputed statement is unclear, because the detective did not identify the "information," its source, or any of the "possible suspects." But even assuming that the statement amounted to inadmissible hearsay, it did not tell the jury anything the jury did not already know. Given that Appellant was on trial, the jury knew that he became a suspect at some point. See *Davis*, 308 Ga. at 750 (noting that the lead investigator's testimony that she focused on the defendant as a potential suspect "was an obvious point given that she ultimately arrested him"). The testimony also did not violate Appellant's constitutional right to confront his accusers. See id. at 749, n.3 (rejecting the defendant's argument that the investigator's testimony that she focused on him after interviewing more than 30 people violated his right to confront his accusers because the investigator did not testify to the substance of what any of the witnesses told her). Additionally, the jury was instructed to disregard

16

the detective's statement and expressly agreed to do so. Under these circumstances, the trial court again acted within its discretion in denying the mistrial motion. See id. at 754.

4. During the final jury charge, the trial court gave a set of instructions on accomplice testimony, see generally OCGA § 24-14-8, which included charges that the testimony of an accomplice alone is insufficient to warrant a conviction, that such testimony must be supported by other evidence that would independently lead to an inference of guilty, and that who is an accomplice and what supporting evidence is sufficient are matters within the jury's purview to decide. The court also instructed that "[t]he testimony of one accomplice may be supported by the testimony of another accomplice."

Appellant contends that his trial counsel's failure to object to the accomplice-corroborating-accomplice instruction constituted ineffective assistance, because two accomplices did not testify at his trial. To prevail on this claim, Appellant must show both "that his trial counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the

17

result of the trial would have been different." *Powell v. State*, 307 Ga. 96, 103 (834 SE2d 822) (2019). See also *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "'In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Jackson v. State*, 305 Ga. 614, 622 (825 SE2d 188) (2019) (citation omitted).

It appears that the accomplice-corroborating-accomplice instruction that the trial court gave was not applicable to this case. The evidence at trial showed that Appellant may have had two accomplices — Jones and Burgess.[10] But only one of them — Burgess – testified as a witness at trial.[11] Accordingly, if Appellant's counsel

---

[10] Although Burgess claimed at trial to be an unwitting helper, her testimony about driving Appellant and Jones to the crime scene and then away from it after Appellant said that he and Jones were going to rob the victims, they displayed guns, and they shot at the victims, along with her guilty plea to attempted armed robbery, was sufficient for a jury to find that she was an accomplice. See *Doyle v. State*, 307 Ga. 609, 613 (837 SE2d 833) (2020) (holding that the jury could have found that a witness was an accomplice when he drove the appellant and another accomplice to the crime scene, saw them holding guns in the car, drove them away from the scene after hearing gunshots, and did not report the shooting to authorities).

[11] Neither party argues that there were statements made by Jones but admitted through other witnesses that constitute "testimony" by Jones. See

had objected to the instruction, the trial court should have omitted it from the series of charges on accomplice testimony. But even assuming that counsel's failure to make such an objection was deficient, Appellant has failed to show resulting prejudice.

Appellant's argument that the inapplicable instruction was prejudicial is premised on *Crosby v. State*, 150 Ga. App. 555 (258 SE2d 264) (1979), where the Court of Appeals held that the trial court committed reversible error when it instructed the jury on corroboration by a second accomplice even though only one accomplice testified. That holding was summarized this way: "The inapplicable instruction in the instant case authorized the jury to reach a finding of guilty by a theory not supported by the evidence, and we can not

*Foster v. State*, 304 Ga. 624, 627 n.5 (820 SE2d 723) (2018) (declining to address "whether the hearsay statements of witnesses at trial who are testifying about the matters allegedly told to them by an accomplice must be corroborated in the same manner as the actual testimony of an accomplice pursuant to OCGA § 24-14-8"); *Lawrence v. State*, 342 Ga. App. 396, 403 (802 SE2d 859) (2017) (holding that it was not plain error for the trial court to fail to instruct the jury that accomplice testimony must be corroborated because neither controlling precedent nor the text of OCGA § 24-14-8 clearly establishes that accomplice statements introduced by another witness constitute accomplice "testimony"). If, however, there were statements from Jones, admitted through other witnesses, that could be considered accomplice "testimony," then the accomplice-corroborating-accomplice instruction was properly given and Appellant's claim of ineffective assistance of counsel would fail for that reason.

say[,] as a matter of law, that the charge was neither confusing nor misleading." Id. at 558. The Court of Appeals did not explain, however, how the jury could find the defendant guilty beyond a reasonable doubt based on a theory not supported by any evidence.

This Court has never endorsed *Crosby*'s holding, which runs contrary to our cases that generally deem harmless a jury instruction that indicates that a defendant could be found guilty under a theory for which there was no evidence or even argument (and in this case the State never argued that there was testimony from a second accomplice). See, e.g., *Wetzel v. State*, 298 Ga. 20, 36 n.17 (779 SE2d 263) (2015) ("'(G)enerally it is not [harmful] error to charge the jury on a portion of the Code section that may be inapplicable under the facts in evidence.'" (quoting *Chapman v. State*, 273 Ga. 865, 868 (548 SE2d 278) (2001)). See also *Saffold v. State*, 298 Ga. 643, 650-651 (784 SE2d 365) (2016) ("[T]here may have been no evidence to support such a finding [under a jury instruction regarding parties to a crime], but again the State never argued that Appellant was a party to the crime on these grounds, and it is quite unlikely the jury based its verdict on

this surplus language."). We also note that in all of its subsequent cases where the accomplice-corroborating-accomplice instruction was determined to have been given without evidentiary support, the Court of Appeals has distinguished *Crosby* and held the error to be harmless. See *Jackson v. State*, 281 Ga. App. 83, 88 (635 SE2d 372) (2006); *Polite v. State*, 273 Ga. App. 235, 241 (614 SE2d 849) (2005); *Saxon v. State*, 266 Ga. App. 547, 553 (597 SE2d 608) (2004).

Accordingly, to the extent that *Crosby* can be read as establishing a rule that erroneously giving the accomplice-corroborating-accomplice instruction at issue here is always prejudicial, it is disapproved. And under the circumstances of this case, we see no prejudice. The jury was told that it could consider the testimony of one accomplice as corroboration of another accomplice's testimony, but because there was no testimony about the murders from a second accomplice, the jury necessarily had to look for other evidence — such as Cooper's testimony — for the necessary corroboration of Burgess's testimony. Because there is no reasonable probability that the result of the trial would have been different had the disputed jury instruction

been omitted, Appellant's ineffective assistance claim fails.

5. Appellant also contends that his trial counsel was ineffective in failing to object to the trial court's defining aggravated assault three times during the final jury charge. Two of those definitions corresponded to two separate crimes charged in the indictment — felony murder based on aggravated assault and aggravated assault. It is not clear why the court defined aggravated assault a third time, but it is also not clear how this additional repetition harmed Appellant. All three times, the court gave substantially the same instruction, and Appellant does not argue that the instruction itself was erroneous.

Generally, "'[m]ere repetition of a correct and applicable principle of law is not such error as requires reversal unless it takes color of an argumentative or opinionative utterance so as to tend to prejudice the minds of the jury.'" *Grier v. State*, 273 Ga. 363, 365 (541 SE2d 369) (2001) (citation omitted). Appellant has not shown how the repetition of the correct definition of aggravated assault was "argumentative or opinionative" or prejudiced him in any way. Thus, even assuming that trial counsel was deficient for not objecting to the repetitive charge,

22

Appellant's claim of ineffective assistance of counsel fails because he has failed to show prejudice. See id.

6. Although we have evaluated separately Appellant's two claims of ineffective assistance of counsel based on his trial counsel's failure to object to jury instructions, we also recognize that "the effect of prejudice resulting from counsel's deficient performance is viewed cumulatively." *Grant v. State*, 305 Ga. 170, 178 (824 SE2d 255) (2019). To that end, we conclude that the cumulative prejudice from the deficiencies assumed in Divisions 4 and 5 does not create a reasonable probability that the result of the proceedings would have been different in the absence of the deficiencies alleged.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 2020.
Murder. Chatham Superior Court. Before Judge Bass.
*Steven L. Sparger*, for appellant.
*Meg E. Heap, District Attorney, Emily C. Puhala, Assistant*

*District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.