**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 30, 2023**

# In the Court of Appeals of Georgia

A23A0037. SHIELDS v. THE STATE.

GOBEIL, Judge.

Following a jury trial, James Shields, a member of the US Army, was found guilty of four counts of sexual exploitation of children for distributing child pornography on four separate occasions. On appeal, Shields argues the trial court erred by finding that his inculpatory statements to law enforcement and consent to search were voluntary due to the inherently coercive situation of being questioned in front of his commanding officer. He also asserts that the trial court's instructions improperly allowed the jury to find Shields guilty of conduct that occurred on a military base, over which the trial court had no jurisdiction. Finally, he maintains that he received ineffective assistance of counsel based on trial counsel's failure to object to the allegedly erroneous jury charge. For the reasons set forth below, we affirm.

Shields does not challenge the sufficiency of the evidence supporting his convictions. Accordingly, "we review only the evidence presented at trial that is relevant to [Shields's] enumerations of error and any factual background needed to provide context for them." *Eaker v. State*, 315 Ga. 202, 203 (1) (881 SE2d 673) (2022) (footnote omitted). This evidence included the following. Charles Woodall is a detective with the Liberty County Sheriff's Office who specializes in computer related investigations. As part of his work with the federal Internet Crimes Against Children Task Force, Detective Woodall monitors various peer-to-peer file sharing networks that are used for the distribution of child pornography. In August 2011, Detective Woodall observed a specific IP address that was offering for download various files containing child pornography and discovered that the IP address was local to Liberty County and had been issued by a local internet service provider. On five separate occasions, while he was operating out of his Liberty County office, Detective Woodall downloaded files containing material depicting the sexual exploitation of children from this IP address. Detective Woodall determined that the computer associated with the IP address was located within Fort Stewart, and he contacted the United States Army Criminal Investigation Command ("CID") at Fort

Stewart. The CID office confirmed that Shields was a soldier assigned to and residing at Fort Stewart.

Following authorization from Shields's commander to proceed with the investigation, Detective Woodall met with Shields, Shields's commander, and CID Special Agent David DiBernardo in the commander's office at Fort Stewart. Shields then answered Woodall's questions, and admitted to having illicit videos of minors on his computer and making them available for others to download; he also confirmed that he recognized the list of videos Woodall had downloaded from his computer. After receiving permission from Shields to search his barracks, Detective Woodall seized Shields's computer and other electronic devices. During a forensic examination of Shields's computer, Detective Woodall located the files he had downloaded in August of 2011. He determined these videos had been distributed through Shields's computer because they were sent from his IP address and corresponded to unique identifying numbers.

Shields was indicted on five counts of sexual exploitation of children (OCGA § 16-12-100 (b)), with each count alleging that he knowingly distributed child pornography in Liberty County. The jury found Shields guilty of four of the five counts of the indictment, and the trial court sentenced Shields to a total term of 12

years, with the first six years to be served in confinement and the remainder to be served on probation. Shields filed a motion for new trial as amended, which the trial court denied,[1] and this appeal followed.

1. Shields first argues that, given the "inherently coercive" situation in which he was questioned in the presence of his commanding officer, the trial court erred by concluding that his statements to Detective Woodall were voluntarily made.[2] Specifically, he maintains that he feared discharge, pay reduction, and discipline if he did not answer Detective Woodall's questions, and therefore, under *Garrity v. New Jersey*, 385 U. S. 493 (87 SCt 616, 17 LE2d 562) (1967),[3] his statements were involuntary. We discern no reversible error.

---

[1] Shields waived his presence at the hearing on his motion for new trial, a transcript of which does not appear in the record.

[2] Shields also argues that his consent to the search of his barracks was involuntary. However, he did not argue below that his consent to search was not freely and voluntarily given, and, "[u]nder our appellate procedure a reason why evidence should not be admitted will not be considered on appeal unless the reason was urged below." *Lombardo v. State*, 187 Ga. App. 440, 442 (4) (370 SE2d 503) (1988) (citation and punctuation omitted).

[3] In *Garrity*, the United States Supreme Court held that statements obtained under threat of removal from office or government employment cannot be used in subsequent criminal proceedings. Id. at 497-499.

In reviewing a ruling on the admissibility of a defendant's statements where the facts are disputed, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts. A reviewing court may consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape. On the other hand, to the extent that legally significant facts were proved by evidence other than the video recording, the trial court as fact finder was entitled to determine the credibility and weight of that other evidence.

*State v. Richardson*, 353 Ga. App. 368, 368-369 (837 SE2d 524) (2020) (citation and punctuation omitted).

At the pre-trial *Jackson-Denno*[4] hearing, the trial court heard testimony from Detective Woodall and Shields concerning the circumstances of Shields's interview. After considering Detective Woodall's and Shields's testimony, the trial court ruled that the statements were noncustodial and therefore *Miranda*[5] warnings were not required. The trial court found that Shields's statements were freely and voluntarily

---

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

made, and found no evidence of coercion, duress, threats, use of violence, fear of injury, or suggestions of promises of leniency or reward.

At the hearing, Detective Woodall testified that after he identified Shields as a person of interest in the child pornography investigation, he went to Fort Stewart and briefed Shields's commander on the situation. The commander had Shields brought to his office and he allowed Detective Woodall "access to talk to [Shields] without any chain of command or anybody there so there'd be no influence one way or the other." After the commander and CID agent left the room, Woodall advised Shields of the investigation and told him that he could agree to be interviewed, or had the option to terminate the interview. After Woodall informed Shields that he was not under arrest and was free to leave at any time, Shields indicated that he understood and agreed to speak to Detective Woodall.

Shields testified that when he arrived at the commander's office, Detective Woodall, CID agent DiBernardo, and the commander were present. After DiBernardo and Detective Woodall introduced themselves, the commander and DiBernardo left the room. However, Shields testified that he did not feel like the interview was a voluntary process, and he felt "compelled" to speak with Detective Woodall. Shields admitted that he knew he was not under arrest, but he denied that Detective Woodall

6

informed him that he could leave or terminate the interview at any time. Shields described that military protocol required him to stay in his commander's office until dismissed by his commander. Despite this protocol, Shields conceded that he was able to leave the commander's office and voluntarily left with Woodall to go to the barracks. According to Shields, during the approximately 20-minute interview, Woodall did not make any promises or offer reassurances to him. Additionally, aside from unspecified "negative repercussions" he might face for leaving the commander's office, Shields did not testify that he feared discharge from the Army, loss of pay, or confinement if he refused to speak to Woodall.

In light of the above-summarized testimony, the trial court was authorized to resolve conflicts in the evidence and conclude that Shields's statements to Woodall were noncustodial and voluntary. See *Beaudoin v. State*, 311 Ga. App. 91, 93-94 (3) (714 SE2d 624) (2011) (trial court's findings that defendant's statements were freely and voluntarily made under noncustodial circumstances were supported by detective's testimony that defendant voluntarily came to police station, was not in custody during interview, showed no reluctance in talking to detective, and was allowed to leave station after interview); *Sams v. State*, 239 Ga. App. 715, 717 (2) (521 SE2d 848) (1999) (defendant was not "in custody" for *Miranda* purposes when he made

statements to officer at police station; officer testified that he did not coerce defendant into coming to police station, that defendant was free to leave during questioning, and that defendant was neither physically restrained nor unable to leave interview room). Moreover, because Shields failed to present evidence of either an overt threat of termination or subjective belief on Shields's part that his employment would be terminated if he refused to answer Detective Woodall's questions, he has failed to establish a *Garrity* violation that would require exclusion of his statements. See *State v. Stinson*, 244 Ga. App. 622, 625 (536 SE2d 293) (2000) (reversing trial court's exclusion of statement under *Garrity* where defendant failed to present evidence of either an overt threat to terminate his employment or that he subjectively believed he would be terminated if he failed to answer questions).

Accordingly, the trial court properly admitted Shields's statements from the interview.

2. Next, Shields argues that the trial court's instructions to the jury amount to plain error because they allowed the jury to convict him based solely on conduct that occurred on a military base, over which the Superior Court of Liberty County lacked jurisdiction.

Under OCGA § 16-12-100 (b) (5), "[i]t is unlawful for any person knowingly to create, reproduce, publish, promote, sell, *distribute*, give, exhibit, or possess with intent to sell or distribute a visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." (Emphasis supplied.) In a prosecution for sexual exploitation of children, venue is proper either in the county where the defendant knowingly makes the files available, or in the county where those files are downloaded. *Lawrence v. State*, 357 Ga. App. 272, 276-277 (2) (850 SE2d 463) (2020). With regard to military installations, OCGA § 50-2-23 provides that Georgia courts "retain[ ] criminal jurisdiction over persons for state offenses committed on property that has been acquired by the United States, except for property used by the Department of Defense[.]" *Jackson v. State*, 183 Ga. App. 594, 595 (359 SE2d 457) (1987). Thus, although the trial court lacked jurisdiction over conduct that occurred solely on the military base at Fort Stewart, the court did have jurisdiction over the actionable conduct that occurred solely in Liberty County, i.e., the distribution of child pornography that occurred when Detective Woodall downloaded files from Shields's computer via a computer located in Woodall's office in Liberty County. *Lawrence*, 357 Ga. App. at 276-277 (2).

9

During its charge to the jury, the trial court tailored its instructions to the jury to track the language of the indictment (which charged only distribution), and advised the jury: "It is unlawful for any person to knowingly distribute any visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." The court then defined "distribution" as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Distribution includes posting material involving sexual exploitation of a minor on a Web site for public viewing." Additionally, the court instructed the jury that "the State must prove beyond a reasonable doubt that the alleged crimes occurred in Liberty County, Georgia." Shields takes issue with the portion of the court's charge defining distribution as "possession with intent to distribute," and argues that this instruction permitted the jurors to convict him of *possessing* the illicit material, an act which he maintains occurred only on Fort Stewart, and over which the Superior Court of Liberty County did not have jurisdiction.

Because trial counsel failed to object to the court's instructions at trial, we review the jury instructions for plain error. See OCGA § 17-8-58 (b) (where a party fails to object to a jury charge before the jury retires to deliberate, appellate review

of the unobjected-to jury charge is precluded "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties[ ]"). Plain error is defined as "that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity, or public reputation of a judicial proceeding." *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011) (citation and punctuation omitted). Under the plain error standard of review, appellate courts assess whether "the trial court's instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Simpson v. State*, 302 Ga. 875, 877 (2) (808 SE2d 718) (2017). Thus, even if the trial court's charge was erroneous, the finding of error does not end our inquiry.

The third prong of plain error review requires the defendant to show that the outcome of the trial was likely affected by the improper instruction. "Satisfying all four prongs of [the plain error] standard is difficult, as it should be." *Kelly*, 290 at 33 (2) (a) (citation and punctuation omitted). Shields's argument that the trial court's alleged erroneous charge affected the outcome of the trial fails for two reasons.

11

First, both the prosecution and the defense correctly focused only on the distribution that occurred when Detective Woodall downloaded the illicit materials in his Liberty County office. Detective Woodall testified that because Shields's address was located on Fort Stewart, he did not have jurisdiction and had to receive permission from Shields's commander to continue his investigation. Additionally, Woodall testified that he limited his investigation of Shields's computer to the distribution charges, rather than to possession which would have encompassed additional child pornography files located on Shields's computer that were not downloaded by Woodall at his office in Liberty County. Similarly, during closing argument, defense counsel noted that Detective Woodall was not investigating Shields for possession, as Woodall "admitted that the issue of possession would be an issue over which he did not have jurisdiction." Defense counsel also mentioned Detective Woodall's downloading the obscene material, an act which he characterized as "allegedly distributing" and which occurred at the sheriff's office. Accordingly, the jury heard sufficient evidence to convict Shields of distribution based on Woodall's downloading and accessing the illicit material in Liberty County.

Second, "[p]roof of venue is essential to a criminal prosecution." *Graham v. State*, 275 Ga. 290, 292 (2) (565 SE2d 467) (2002). Here, the jury would not have

12

been authorized to find Shields guilty of merely possessing the illegal materials because there was no evidence that Shields's barracks at Fort Stewart were situated in Liberty County. Cf. *Wilkins v. State*, 308 Ga. 131, 139 (4) (839 SE2d 525) (2020) (recognizing Georgia case law "generally deem[s] harmless a jury instruction that indicates that a defendant could be found guilty under a theory for which there was no evidence or even argument"). The jury did, however, hear testimony that the sheriff's office where Detective Woodall downloaded the material was located in Liberty County. This evidence, coupled with the trial court's instruction that "the State must prove beyond a reasonable doubt that the alleged crimes occurred in Liberty County, Georgia," also supports the conclusion that the result of the trial would not have been different had the disputed jury instruction been omitted.

In light of the foregoing, the trial court's instructions to the jury did not amount to plain error.

3. Finally, Shields contends that trial counsel was ineffective for failing to object to the trial court's instruction to the jury on the definition of distribution. Based on our conclusion in Division 2, supra, that the trial court's erroneous charge did not likely affect the outcome of the trial proceedings, Shields cannot show prejudice, and this claim necessarily fails. See *Wilkins*, 308 Ga. at 138-140 (4)

13

(holding that inclusion of disputed jury charge did not amount to ineffective assistance because there was no reasonable probability that the result of the trial would have been different had the instruction been omitted).

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*