**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 15, 2024

S24A0512. ROBBINS v. THE STATE.

ELLINGTON, Justice.

Joandre Robbins was convicted of malice murder in connection with the August 2014 shooting death of Wayne Edwards.[1] On appeal, Robbins contends that the trial court abused its discretion in excluding from evidence two photographs of Edwards holding

---

[1] Edwards was killed on August 16, 2014. On March 18, 2015, a Chatham County grand jury indicted Robbins and Michael Thompson for malice murder and felony murder predicated on aggravated assault. On October 13, 2015, Thompson entered a guilty plea and was convicted of a reduced charge of aggravated assault and sentenced to 20 years of probation. On November 6, 2015, a jury found Robbins guilty on both counts. The trial court sentenced Robbins to life in prison for malice murder. Although the trial court purported to merge the felony murder count with the malice murder count for sentencing, the felony murder count actually was vacated by operation of law. See *Williams v. State*, 316 Ga. 147, 153 (3) (886 SE2d 818) (2023). Robbins timely moved for a new trial on November 12, 2015. Robbins amended his motion for new trial on October 25, 2019, and again on November 13, 2019. After a hearing on November 13, 2019, the trial court denied Robbins's motion for new trial, as amended, on November 1, 2023. Robbins filed a timely notice of appeal in this Court on November 27, 2023. This case was docketed in this Court to the April 2024 term and submitted for a decision on the briefs.

guns. Robbins also contends that his trial counsel provided constitutionally ineffective assistance on three grounds. For the reasons explained below, we affirm.

1. As pertinent to Robbins's claims on appeal, the evidence presented at trial showed the following. Approximately one week before the shooting, Taylor Smith drove Robbins to a family member's apartment to retrieve some medicine. Michael Thompson, who was a friend of Robbins, accompanied them. After Thompson, Robbins, and Smith arrived at the family member's apartment, Thompson and Robbins went inside, leaving Smith outside. When Thompson and Robbins returned, Smith was gone, and Edwards—who was Smith's brother—jumped over the car toward Robbins and said, "Y'all f**ked, ni**as, give it up." Edwards was holding a gun. Robbins responded, "I don't play like that[.]" Edwards then stated, "you'll be the next ni**a on [a rest-in-peace] shirt."

On August 16, 2014—approximately one week after the altercation between Robbins and Edwards—Thompson asked Smith for a ride to a party that evening. Smith agreed, and Thompson told

Smith to pick him up at Robbins's house. Smith assured Thompson that "nobody [would be] in the car with him." Before picking up Thompson, Smith picked up Edwards and two minor girls. Edwards drove the car, with Smith in the passenger seat and the two girls in the back seat. During a brief stop en route to Robbins's house, Edwards removed a handgun from the car's console and placed it in one of the girls' purse, which remained with her in the backseat of the car.

When the four arrived at Robbins's house, Thompson and Robbins came into the front yard and approached the waiting car. Thompson testified that Edwards, while still in the driver's seat, mimed holding a gun, although he had no gun in his hand. According to Thompson, Robbins then took out an actual gun and held it at his side—to which Edwards responded, "[t]hat little behind gun." Robbins replied, "[y]eah, ni**a, what that s**t you said?" As Edwards turned toward the car's backseat, Smith heard Thompson tell Robbins to "shoot that ni**a." Robbins then fired his gun at least five times, killing Edwards with a bullet wound to the back.

At trial, Robbins's trial counsel argued that Robbins shot Edwards in self-defense, contending that he shot Edwards because he believed Edwards was turning to reach for a gun in the backseat of the car immediately prior to the shooting.[2] Relatedly, Thompson and Smith both testified that they were aware that Edwards carried a gun.

Additionally, Thompson testified about his guilty plea. He admitted on cross-examination that he "cut a deal [with the State] to get from one to twenty years" if he testified at trial for the State. Thompson also admitted "that if [he] was convicted of felony murder, [he would] have to do thirty years [in prison] before [he would] be considered for parole."

2. Robbins contends that the trial court abused its discretion in excluding from evidence two photographs of Edwards holding guns.

At trial, Robbins attempted to offer into evidence one photograph of Edwards holding a handgun and one photograph of Edwards holding a rifle. The trial court excluded the photographs

_____

[2] Robbins did not testify at trial.

based on the State's objection that they constituted impermissible character evidence. See OCGA § 24-4-404 (a). On appeal, Robbins argues that he did not offer the photographs to show Edwards's bad character, but as "additional evidence to strengthen the point of Edwards' having threatened Robbins with a gun a week before Edwards died and Robbins' expectation that Edwards very likely had a gun at the time of the shooting."

However, we need not decide whether the trial court erroneously excluded the photographs, because even assuming that it did, the error was harmless. "'Erroneous evidentiary rulings are subject to a harmless-error test.'" *Johnson v. State*, 316 Ga. 672, 683 (4) (889 SE2d 914) (2023) (citation and punctuation omitted). "A nonconstitutional error is harmless if it is 'highly probable that the error did not contribute to the verdict.'" Id. at 683-684 (4) (citation omitted). "The burden to make this showing is the State's to bear, and in determining whether the showing has been made, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have weighed it." Id. at 684 (4).

Here, it is highly probable that the trial court's error, if any, in excluding the photographs did not contribute to the verdicts. To the extent that Robbins offered the photographs "as additional evidence to strengthen the point" that Edwards threatened Robbins with a gun a week before Edwards was shot, the photographs were of low probative value given Thompson's testimony that Edwards had made such a threat and Thompson's and Smith's testimony that they were aware Edwards carried a gun—from which the jury could have inferred that Robbins also knew Edwards carried a gun. And to the extent that Robbins offered the photographs as "additional evidence to strengthen the point of . . . Robbins' expectation that Edwards very likely had a gun at the time of the shooting[,]" there was no evidence presented at trial that Robbins actually saw the photographs before the shooting, which would have allowed the jury to infer that the photographs influenced Robbins's expectation that Edwards was armed that day. For these reasons, it is highly probable that the trial court's error, if any, in excluding the photographs did not contribute to the verdict. See, e.g., *Beck v. State*,

6

310 Ga. 491, 498-499 (3) (852 SE2d 535) (2020) (concluding that any error in excluding evidence of a murder victim's "conviction for carrying a firearm without a license" and "other evidence about [the victim's] violent character . . . was cumulative of the evidence about [the victim] that was introduced" and was therefore harmless).

3. Robbins also contends that trial counsel provided constitutionally ineffective assistance in three ways.

To prevail on a claim of ineffective assistance of counsel, a "defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). "To satisfy the deficiency prong, a defendant must demonstrate that his attorney 'performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.'" *Perkins v. State*, 313 Ga. 885, 901 (5) (873 SE2d 185) (2022) (citation omitted). "This is no easy showing, as the law recognizes a 'strong presumption' that counsel performed reasonably, and [a defendant] bears the burden of

7

overcoming this presumption." *Davis v. State*, 299 Ga. 180, 183 (2) (787 SE2d 221) (2016) (quoting *Strickland*, 466 U.S. at 689 (III) (A)). To carry this burden, a defendant "'must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not.'" *Gardner v. State*, 310 Ga. 515, 518 (2) (852 SE2d 574) (2020) (citation omitted).

"To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Perkins*, 313 Ga. at 901 (5). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694 (III) (B). "This burden is a heavy one[.]" *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019). Moreover, "[t]he reviewing court need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Davis*, 299 Ga. at 183 (2) (quoting *Strickland*, 466 U.S. at 697 (IV)).

(a) Robbins contends that trial counsel provided constitutionally ineffective assistance by failing to move for a

mistrial on the ground that the State violated OCGA § 17-8-76 in its closing argument. In the relevant part, OCGA § 17-8-76 provides:

(a) No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted by the Governor, the State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency.

(b) If counsel for either side in a criminal case argues to or in the presence of the jury as provided in subsection (a) of this Code section, opposing counsel shall have the right immediately to request the court to declare a mistrial, in which case it shall be mandatory upon the court to declare a mistrial. Failure to declare a mistrial shall constitute reversible error.

During trial, trial counsel cross-examined Thompson about the sentence for felony murder and the circumstances of Thompson's guilty plea:

Q: [Y]ou were charged with felony murder, correct?
A: Yes, sir.
Q: And the penalty for felony murder is life in prison, correct?
A: Yes, sir.
Q: And I guess your lawyer -- he's a good lawyer, he got you a good deal -- told you that if you were convicted of felony murder, you'd have to do thirty years before you'd be considered for parole; is that correct?

9

A: Yes, sir.

Q: And you cut a deal to get from one to twenty years; is that correct?

A: Yes, sir.

Q: So the reason you're here is to get out from under a life sentence. That's the reason you're here, isn't it?

A: Yes, sir.

During its closing argument, the State referenced the above exchange and related it to the sentence that Robbins faced if convicted:

> Ordinarily, in a criminal case, juries don't get to find out what potential sentences are upon conviction. . . . But you legitimately found out this time [about the sentence that Robbins faced if convicted], and it's legitimate because [Robbins's trial counsel] is perfectly entitled to challenge the witness I put on the stand, Michael Thompson, about what his motives might have been for testifying. And I can't complain about that. I put him on the stand. I knew that was coming. . . . [trial counsel's] challenge to Mr. Thompson, you know that if you convict Joandre Robbins, it's a long, hard road for him based on current parole guidelines.

Robbins's trial counsel did not object.

At the motion-for-new-trial hearing, trial counsel testified that he cross-examined Thompson about his plea "to show what a good deal [Thompson] was getting[ ]" in exchange for testifying at

Robbins's trial. When asked why he did not object to the State's comment in its closing argument about Robbins's parole, trial counsel testified:

> I knew the jury already knew [the sentence Robbins faced if convicted] because I had gone through it with Mr. Thompson. But also I thought we had a really good case of self[-]defense in this case. And it was my feeling at the time of trial, if it was driven home again to the jury that if you convict this young man based on this evidence, which I thought was a good self[-]defense case, he's going to have to do 30 years in prison before he would even be paroled.

On appeal, Robbins contends that trial counsel provided constitutionally ineffective assistance by failing to move for a mistrial on the ground that the State violated OCGA § 17-8-76 by arguing in its closing that "it's a long, hard road for [Robbins] based on current parole guidelines." However, because we cannot say that trial counsel's performance was "objectively unreasonable . . . in the light of prevailing professional norms[,]" trial counsel was not constitutionally deficient in this respect. *Anthony v. State*, 311 Ga. 293, 296 (1) (857 SE2d 682) (2021). Trial counsel's assessment that he did not object to the State's comment because he thought that

11

Robbins "had a really good case of self[-]defense" was not objectively unreasonable given the evidence presented that Edwards had previously threatened Robbins while showing a gun; Edwards mimed shooting at Robbins immediately before the shooting; and Robbins shot Edwards in his back, which supported Robbin's self-defense argument that he shot Edwards because he believed Edwards was turning to retrieve a gun. Given the evidence that Robbins acted in self-defense and trial counsel's assessment that the State's parole comment struck him as helpful to Robbins's defense considering that evidence, we cannot say that trial counsel's decision to continue working for a possible acquittal—instead of obtaining a mistrial and retrying the case—was "objectively unreasonable . . . in the light of prevailing professional norms." *Anthony*, 311 Ga. at 296 (1) (concluding, where a portion of the indictment read to the jury falsely alleged that the defendant was a convicted felon, that the defendant "failed to show that his trial counsel's decision not to request a mistrial was objectively unreasonable[ ]" because "the convicted-felon counts of the indictment were read only once, [ ] trial

12

counsel wanted to try [the defendant's] case in front of the jury that he had already selected, [the defendant] agreed to trial counsel's recommendation to seek a curative instruction and not a mistrial, and [ ] the trial court informed the jury that the State had made a 'mistake' in the charges because [the defendant] was not actually a convicted felon"). See also *State v. Goff*, 308 Ga. 330, 335 (2) (840 SE2d 359) (2020) (concluding, where "[t]rial counsel testified that he declined to press for a mistrial because he thought 'we had a pretty good jury and a pretty good trial going[,]'" that "trial counsel's assessment" was not "objectively unreasonable" "[g]iven the fleeting, nonspecific nature of [the witness's] reference to [the defendant's] probation status[ ]" (citations omitted)).

(b) Robbins also claims that trial counsel provided constitutionally ineffective assistance of counsel by failing to object to a self-defense jury instruction on the use of excessive force. The trial court instructed the jury on the issue of self-defense as follows:

> A person is justified in threatening or using force against another person when, and to the extent that, he reasonably believes that such threat or force is necessary

to defend himself or a third person against the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person . . . reasonably believes that such force is necessary to prevent death or great bodily injury to himself.

. . .

A person is not justified in using force if that person: initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant; or is attempting to commit or is committing a felony, the offense of aggravated assault is a felony . . . and has been previously defined for you; or was the aggressor, unless the person withdraws from the encounter and effectively communicates his intent to withdraw to the other person and the other person still continues or threatens to continue the use of unlawful force.

. . .

[O]ne who is not the aggressor is not required to retreat . . . before being justified in using force that is necessary for personal defense or using force that is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to oneself or to a third person.

. . .

[T]he use of excessive or unlawful force while acting in self-defense is not justifiable, and the Defendant's conduct in this case would not be justified[,] if you find

14

that the force used exceeded that which the Defendant reasonably believed was necessary to defend against the victim's use of unlawful force, if any. . . . [*W*]*hen the force used exceeds that necessary for self-defense, the law considers the purported defender to be the aggressor.*

(emphasis supplied). Trial counsel did not object to this portion of the jury charge.

On appeal, Robbins contends that trial counsel provided constitutionally ineffective assistance by failing to object to the italicized language, claiming that the italicized language impermissibly "emphasized that charge by repetition of law favorable to the State." However, we have concluded that a trial court did not err in giving a jury instruction with substantially the same language as that at issue here because it "adequately captured th[e] principle of law" that "'[a] homicide is not justified if the force used by the defendant exceeds that which a reasonable person would believe was necessary to defend against the victim's unlawful act[.]'" *Wynn v. State*, 313 Ga. 827, 839 (5) (874 SE2d 42) (2022) (citation omitted) (noting that the trial court instructed the jury as follows: "When the force used exceeds that necessary for self-defense, the law

15

considers the defender to be the aggressor[]"). See also *Hill v. State*, 290 Ga. 493, 497-498 (5) (722 SE2d 708) (2012) (rejecting a challenge to a portion of a self-defense jury charge providing that, "[w]here the force used exceeds that necessary for defense of the person, the law will consider the defender the aggressor," because "'the charge as a whole encompasse[d] the elements of self-defense under OCGA § 16-3-21.'" (punctuation omitted)). Moreover, in the context of analyzing an ineffective assistance of counsel claim, we have explained that "mere repetition of a correct and applicable principle of law is not such error as requires reversal unless it takes color of an argumentative or opinionative utterance so as to tend to prejudice the minds of the jury." *Wilkins v. State*, 308 Ga. 131, 140 (5) (839 SE2d 525) (2020) (citation and punctuation omitted).

The language at issue here—supported by at least some evidence presented at trial—"adequately captured" the legal principle that "[a] homicide is not justified if the force used by the defendant exceeds that which a reasonable person would believe was necessary to defend against the victim's unlawful act[.]'" *Wynn*, 313

16

Ga. at 839 (5). And even assuming that the language at issue was repetitive of other portions of the charge, Robbins has not shown that it was inapplicable or "argumentative or opinionative so as to tend to prejudice the minds of the jury." *Wilkins*, 308 Ga. at 140 (5). Consequently, Robbins has not shown that trial counsel was constitutionally deficient for failing to object to the language at issue on the ground that it "emphasized th[e] charge by repetition of law favorable to the State." See, e.g., *Walker v. State*, 306 Ga. 637, 645 (2) (832 SE2d 783) (2019) (explaining that "the failure to make a meritless objection is not deficient performance").

(c) Robbins claims that trial counsel provided constitutionally ineffective assistance by failing to object to the trial court's response to the jury's request for a definition of "implied malice." In its closing charge on the issue of malice, the trial court instructed the jury that

> [a] person commits murder when that person unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of another human being, which is shown by external circumstances capable of proof. Malice may, but need not, be implied when no considerable provocation appears and

17

when all of the circumstances of the killing show an abandoned and malignant heart.

While it was deliberating, the jury sent the trial court the following question: "Can you clarify 'malice may but need not be implied when no considerable provocation appears and when all of the circumstances of the killing show an abandoned and malignant heart?'" The jury underlined the phrase "no considerable provocation."

After considering the question, the trial court stated to the parties, but outside of the jury's presence, that:

> [M]y staff attorney . . . found some case law from *Browder v. State*, [294 Ga. 188, 190 (1) (751 SE2d 354) (2013)] . . . that reads as follows. "Implied malice may be found when the defendant's conduct exhibits a reckless disregard for human life. Implied malice is defined as extremely negligent conduct which creates what a reasonable man would realize to be . . . not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another or to others – though unaccompanied by any intent to kill or do serious bodily injury – and which actually causes the death of another. Reckless disregard for human life may be the equivalent of a specific intent to kill." . . . I point that out as one possibility [to instruct the jury].

Trial counsel did not object to the trial court's instructing the jury

18

using the text from *Browder*. The trial court then read the foregoing quote from *Browder* to the jury.

On appeal, Robbins contends that trial counsel should have objected to the *Browder* excerpt because, among other things, there was no evidence of "extremely negligent conduct." However, pretermitting whether trial counsel was constitutionally deficient in failing to object to the trial court's response, Robbins has not shown that trial counsel's failure to object prejudiced him because the trial court's response to the jury's question was inapplicable to the evidence presented at trial. Robbins contended at trial that he purposefully shot Edwards in self-defense because he believed that Edwards was turning in his seat to retrieve a gun. And there was evidence to support that contention: Edwards had threatened Robbins while holding a gun one week before the shooting; Edwards mimed holding a gun at Robbins immediately before the shooting; and Robbins shot Edwards in his back, which supported Robbin's argument that Robbins shot Edwards because he believed Edwards was turning in his seat to retrieve a gun. Moreover, neither party

19

introduced evidence or argument that Robbins's conduct in shooting Edwards was "extremely negligent." Under these circumstances, Robbins has not shown a reasonable probability that the result of the trial would have been different had trial counsel objected because we "generally deem harmless a jury instruction that indicates that a defendant could be found guilty under a theory for which there was no evidence or even argument[.]" *Wilkins*, 308 Ga. at 139-140 (4) (concluding trial counsel's failure to object to a jury instruction that "'(t)he testimony of one accomplice may be supported by the testimony of another accomplice'" was inapplicable and therefore harmless where the defendant "may have had two accomplices . . . [b]ut only one of them . . . testified as a witness at trial" because "there was no testimony about the [crime] from a second accomplice"); *Saffold v. State*, 298 Ga. 643, 650-651 (7) (784 SE2d 365) (2016) (explaining that any error by the trial court in giving the jury a charge on parties to a crime was harmless because there was "no evidence [the appellant] procured someone else to

20

commit the crimes[,]" and the State did not argue to the contrary).[3]

*Judgment affirmed. All the Justices concur.*

---

[3] We have assumed one trial-counsel deficiency in failing to object to the trial court's response to a question from the jury and one trial-court error in excluding photographs that Robbins introduced. Robbins has not contended that we should conduct a cumulative-error review. Even assuming that the assumed trial-counsel deficiency and assumed evidentiary error are errors that could be examined cumulatively, we conclude that any such cumulative error does not demand a new trial. See *Haufler v. State*, 315 Ga. 712, 722 (2) n.14 (884 SE2d 310) (2023) (conducting a cumulative-error review even though the appellant did not request that the Court do so and concluding that "even assuming that these presumed errors should be considered cumulatively, . . . [the appellant] has failed to establish that the combined prejudicial effect of these errors requires a new trial") (citation and punctuation omitted).